**UNITED STATES of America**

**v.**

**Leonard Lee WARD.**

**Crim. No. 31577.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

June 8, 1970.

Gerald J. Gallinghouse, U. S. Atty., Robert O. Homes, Jr., Asst. U. S. Atty., New Orleans, La., for plaintiff.

W. Malcolm Stevenson, New Orleans, for defendant.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

On February 11, 1969, Leonard Lee Ward, the defendant in this criminal contempt proceeding, and Richard T. Hodges were jointly charged in a one-count indictment with knowingly transporting a stolen motor vehicle in interstate commerce from St. Louis, Missouri to New Orleans, Louisiana, in violation of 18 U.S.C. § 2312. On April 9, 1969 Ward pleaded guilty to the charge and was sentenced to 24 months confinement. On November 21, 1969 Hodges was brought to jury trial on the indictment. The government called as a witness Ward, who, after being sworn, gave his name and demanded a lawyer. He then gave his address (prison) and admitted he had pleaded guilty to the same indictment, but from that point forward he refused to answer any questions put to him by the Assistant United States Attorney. His manner throughout the above was surly and disrespectful. The Court thereupon excused the jury and advised Ward that his conduct was contemptuous and punishable by both fine and imprisonment. An exchange then ensued between Ward and the presiding judge, the relevant parts of which are as follows:

THE WITNESS:

Can I ask the Judge one question?

THE COURT:

Yes, you may.

THE WITNESS:

See, when you sentenced me I pleaded guilty and the subpoena say to this Court first Leonard L. Ward only, because I pleaded guilty of and for the charge.

THE COURT:

You are now being called to testify not against yourself but against the defendant Mr. Hodges. You are not being asked to give any evidence that might in any way incriminate against you. You are asked to testify as a citizen of the United States about a charge against Mr. Hodges. The law expects you will answer those questions truthfully to the best of your ability. We don't want you to say anything you don't know, but say what you do know, but say it truthfully.

Call the—

THE WITNESS:

May I ask one more question?

Your Honor, do I have a right to the Fifth Amendment?

THE COURT:

If anything tends to incriminate you of an offense which you have not already been convicted of, you do.

I do not believe you have a right to any Fifth Amendment privilege with respect to a charge that could not be brought against you, and you could not again be charged with interstate transportation of a stolen motor vehicle.

The jury was then recalled, and the prosecutor asked Ward the single question:

Mr. Ward, when was the last time you saw Mr. Hodges?

The Court thereupon instructed Ward that "in the Court's opinion you do not have any Fifth Amendment privilege with respect to the question that's been asked you." The Court directed Ward to answer the question. Ward refused to answer. After a further exchange between the Court and the witness, he was excused, and the government abandoned the prosecution of Hodges.

Ward is presently before this Court pursuant to a rule to show cause why he should not be held in criminal contempt of Court under 18 U.S.C. § 401 (1964) [1], both because of his refusal to answer the Assistant United States Attorney's question after the Court had directed him to do so and because of his allegedly contemptuous behavior on the witness stand. Counsel was appointed to represent Ward in these proceedings, and the parties having waived a jury, trial was had before the undersigned judge on April 10, 1970. See Fed.R. Crim.P. 42(b). The only evidence presented was the relevant portion of the trial transcript, as amplified by the testimony of the presiding judge.

There are two issues before this Court. First, did Ward have a Fifth Amendment right to refuse to answer the Assistant United States Attorney's question? Second, was Ward's conduct on the witness stand so rude and disrespectful as to be contemptuous?

I

WARD'S FIFTH AMENDMENT PRIVILEGE

It is clear that Ward properly invoked his privilege against self-incrimination at Hodges' trial, and hence he was not guilty of contempt in refusing to answer the Assistant United States Attorney's question. The government concedes that despite Ward's plea of guilty to the interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312, he remained subject to prosecution for related federal and state offenses stemming from the same set of circumstances. He still faced the possibilities of prosecution in the federal courts for conspiracy to commit the substantive offense, 18 U.S.C. § 371; in the Missouri courts for theft, 41 Mo.Stat. Ann. §§ 560.156. 560.161 (as amended 1955); and in the Louisiana courts for receiving stolen property, 9 La.Rev. Stat. § 14:69 (1950). *See also* 41 Mo. Stat.Ann. §§ 560.175, 560.180 (1949)[2].

---

1. 18 U.S.C. § 401 reads in relevant part:
    A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
      (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
      *      *      *      *      *

      (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

2. It is settled that a defendant is not subject to double jeopardy by successive prosecutions by the federal and state governments as separate sovereigns, even though for the same acts. Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3

Ward's Fifth Amendment right to remain silent at Hodges' trial could not, of course, be affected by the government's subsequent assertion that it has no intention to prosecute him for conspiracy, or by the fact that there is only a slight possibility of his further prosecution upon the state charges. United States v. Miranti, 253 F.2d 135, 138–139 (2d Cir. 1958). The government also agrees that a responsive answer to the specific question asked of Ward by the Assistant United States Attorney might be incriminatory. Clearly, the answer to the question posed could have led directly to disclosure of the circumstances of the related federal and state crimes for which he was still subject to prosecution. No more is required to justify a refusal to answer, since the privilege extends not only to answers that would themselves support a conviction, but also to "those which would furnish a link in the chain of evidence needed to prosecute" the witness for a crime. Hoffman v. United States, 341 U.S. 479, 486–487, 71 S.Ct. 814, 95 L. Ed. 1118 (1951); Poretto v. United States, 196 F.2d 392, 396 (5th Cir. 1952). Finally, although the government urges that the purpose for which Ward asserted the privilege was not for his own protection, but merely to shield his friend Hodges, it is firmly established that a witness' motives for invoking the privilege are immaterial, so long as he is entitled to assert it in his own behalf in any event. United States v. Courtney, 236 F.2d 921, 923 (2d Cir. 1956).

■ The government strenuously argues that Ward waived his Fifth Amendment privilege by pleading guilty to the indictment in this case. The Court disagrees for the reason that the government misconstrues the scope of the waiver implicit in a guilty plea. The government relies upon the established proposition that by a plea of guilty a defendant admits all the elements of the crime with which he has been charged and thereby waives several of his constitutional rights, including, at least in some measure, his privilege against compulsory self-incrimination. McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Carpenter v. Wainwright, 372 F.2d 940, 941 (5th Cir. 1967). The government further urges that its position is supported by those cases which have held that a defendant who has been convicted for the transactions in question may no longer claim his Fifth Amendment privilege and may be compelled to testify against a co-defendant. United States v. Hoffman, 385 F.2d 501, 504 (7th Cir. 1967), cert. denied, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968); United States v. Gernie, 252 F.2d 664, 669–670 (2d Cir.), cert. denied, 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958); United States v. Romero, 249 F.2d 371, 374–375 (2d Cir. 1957); United States v. Cioffi, 242 F.2d 473, 476–477 (2d Cir.), cert. denied, 353 U.S. 975, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957); Nelson v. Holzman, 300 F. Supp. 201, 203 (D.Ore.1969). But even if some of the language in these decisions may give comfort to the government, they are plainly inapposite on their facts.

■ By pleading guilty to the indictment in this case, Ward necessarily admitted the three essential elements of the offense which must be proven to sustain a conviction of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312: (1) that the motor vehicle had in fact been stolen; (2) that the defendant transported the

L.Ed.2d 684 (1959); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed. 2d 729 (1959); Hill v. Beto, 390 F.2d 640 (5th Cir.), cert. denied, 393 U.S. 1007, 89 S.Ct. 491, 21 L.Ed.2d 472 (1968). See Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (U. S., April 6, 1970). It is also clear

that a federal witness' Fifth Amendment privilege to remain silent includes the right to refuse to answer questions which might tend to incriminate him under state as well as federal law. Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

motor vehicle in interstate commerce; and (3) that the defendant did so willfully and with knowledge that the car had been stolen. United States v. Sutton, 411 F.2d 405, 406 (5th Cir. 1969); Sadler v. United States, 303 F.2d 664, 665 (10th Cir. 1962). It is settled law, however, that in order to establish a violation of 18 U.S.C. § 2312, the government need not prove that the defendant actually stole the motor vehicle. By his plea of guilty, therefore, Ward did not admit to stealing the car, an offense for which he remained subject to prosecution in the Missouri courts; nor did he admit to concert of action with his codefendant Hodges, an essential element of the crime of conspiracy for which he could still be charged in the federal courts. Krulewitch v. United States, 336 U.S. 440, 446–447 n. 7, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (Jackson, J., concurring); Herman v. United States, 289 F.2d 362, 368 (5th Cir.), cert. denied, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961).

In no one of the cases cited by the government was the witness compelled to testify with respect to an element of a crime for which he might still be prosecuted, which was not a necessary element of the offense to which he had pleaded guilty. None of these cases held that the witness' waiver of his Fifth Amendment privilege extended any further than to the facts actually admitted by his plea of guilty—*i. e.*, to those facts which were essential elements of the offense with which he had been charged [3]. Quite plainly, the predicate of the government's cases is that the witness could not have been further incriminated by answering the questions which had been put to him. *See, e. g.*, United States v. Gernie, *supra*, 252 F. 2d at 670. In the present case, despite Ward's plea of guilty, further testimony by him could still incriminate him by leading to disclosure of facts essential to his conviction of related federal and state crimes which had not been admitted by his guilty plea.

The combined research of the Court and counsel has disclosed only two cases which deal with the present issue. Both held that the Fifth Amendment privilege was properly invoked in circumstances substantially the same as those presented here. In United States v. Chase, 281 F. 2d 225 (7th Cir. 1960), the defendants had been previously convicted of bank robbery. Subsequent to their sentencing, they refused before a federal grand jury to name other persons involved in the robbery. On appeal, their ensuing contempt convictions were vacated. While affirming that the defendants had waived their Fifth Amendment privilege as to the offenses of bank robbery to which they had pleaded guilty, the court observed that they were still subject to prosecution under other sections of the Federal Bank Robbery Act and on a charge of conspiracy. The court held that their Fifth Amendment privilege remained as to any questions which might incriminate them concerning any offenses other than the specific offenses to which they had pleaded guilty. Similarly, in United States v. Miranti, *supra*, the defendants had been tried and convicted in a federal court of conspiracy to remove a fugitive felon from a state and had pleaded guilty in a state court to conspiracy and maiming. After their sentencing, they refused to testify before a federal grand jury investigating the alleged intimidation of witnesses and were convicted of contempt. The contempt convictions were reversed. The court held that the defendants had properly invoked their privilege against self-incrimination, because when they appeared before the grand jury they could still have been prosecuted for the substantive federal crimes of obstructing jus-

---

3. Indeed, in United States v. Romero, *supra*, the court specifically noted that although a witness who has been convicted is no longer able to claim the Fifth Amendment privilege with respect to the transactions in question, "the privilege remains for questions relating to transactions other than those for which the witness has been convicted." 249 F.2d at 375.

tice and aiding a fugitive felon to escape across a state line. *See also*: United States v. Edwards, 366 F.2d 853, 870 n. 17 (2d Cir. 1966).

For the foregoing reasons, the Court holds that under the circumstances of this case Ward did not by his plea of guilty waive his right to invoke his Fifth Amendment privilege to refuse to answer questions which might incriminate him on the related federal and state charges for which he could still be prosecuted. The question put to him by the Assistant United States Attorney at Hodges' trial clearly was such a question. Ward was, therefore, not guilty of criminal contempt in refusing to answer.

## II
## WARD'S ALLEGED CONTEMPTUOUS CONDUCT

The government seeks also to convict Ward, through an amendment to the original rule to show cause, for his alleged "surly and disrespectful" conduct toward the Court. At the hearing in this matter the presiding judge at Hodges' trial testified that his primary impression of Ward's conduct was that he was "unwilling and hostile" towards the prosecutor, and that until he had been warned by the judge that his conduct could be contemptuous he was "surly and impolite." The judge further testified that Ward's conduct after he had been warned was not objectionable in and of itself, and that he would have taken no offense to Ward's behavior had it not been for his prior conduct and the background of the case. While it is most difficult to interject any feeling of the courtroom atmosphere into a cold transcript, it does appear from the record that the tone of Ward's answers changed significantly after he was cautioned by the judge. Furthermore, it is obvious that Ward, a witness of limited education and intelligence, was both confused and upset over the denial of what he thought were his rights to counsel and to remain silent, and this undoubtedly contributed in no small way to his at-

titude and demeanor. Under the circumstances, this Court cannot find that Ward's conduct, borderline as it may have been, was so rude and disrespectful as to be contemptuous.

The Court finds the defendant not guilty of the contempts charged. A judgment of acquittal will be entered.

It is so ordered.