## Commonwealth v. Mills, Appellant.

Argued June 9, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Carolyn E. Temin,* Assistant Defender, with her *Vincent J. Ziccardi,* Acting Defender, for appellant.

*Mark Sendrow,* Assistant District Attorney, with him *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 18, 1970:

On March 11, 1969, the defendant Ronald Edward Mills and one Larry Eugene Nelson were indicted in the County of Philadelphia, Commonwealth of Pennsylvania, for crimes connected with the robbery of the Crusader Savings and Loan Association, a federally insured savings and loan association, in the City of Philadelphia. The crimes were carrying a concealed weapon, unlawfully carrying a firearm without a license, and two charges of aggravated robbery.

On April 8, 1969, they were indicted in the United States District Court for the Eastern District of Pennsylvania on three counts of bank robbery and assault under Title 18 U.S.C. 2113 (a) (b) and (d).

Defendant Mills pleaded guilty to the Federal indictment and was sentenced to a term of five years imprisonment.

Defendant, claiming he was placed in double jeopardy, made a motion to have the state charges dismissed, but that motion was denied. He later pleaded guilty to the state charges of carrying a concealed weapon and unlawfully carrying a firearm without a license and was sentenced to five years' probation and three years' probation respectively, said probationary periods to run concurrently and to follow the five-year imprisonment sentence imposed by the Federal Court. Sentence was suspended on the robbery charges.

Defendant claims that the State charges arising out of the same facts upon which he was sentenced by the Federal Court should have been dismissed in that his constitutional rights were violated by being placed in double jeopardy. It is his contention that the decision of the United States Supreme Court in *Bartkus v. Illinois*, 359 U.S. 121, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959), which permitted successive State and Federal prosecutions for the same bank robbery, was overruled by the Court's decision in *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). This conclusion of the defendant is based on the premise that the *Bartkus* decision relied heavily on the holding in *Palko v. Connecticut*, 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 288 (1937), and that since *Palko* was overruled in *Benton,* the *Bartkus* decision was also struck down. In *Palko,* the Court held that the double jeopardy clause of the Fifth Amendment was not to be read into the due process clause of the Fourteenth Amendment. Twenty-two years later *Benton,* in overruling *Palko,* held that protection afforded by the due process clause of the Fourteenth Amendment of the Constitution includes the prohibition against double jeopardy afforded by the Fifth Amendment. Hence, the defendant reasons, the overruling of *Palko* destroyed the foundation of the *Bartkus* decision, thus overruling it.

We cannot agree. Defendant's argument must fall because he fails to distinguish the two different situations in which the *Palko* and *Bartkus* cases arose. Both cases involved two prosecutions and a discussion of double jeopardy. However, the cases are easily distinguished. The United States Supreme Court recognized the distinction and overruled only the *Palko* case. The *Bartkus* rule is still quite alive and was not altered or overruled when the court overruled *Palko*. A discussion of each of these cases will illustrate the distinction.

The Supreme Court decided the *Palko* case in 1937. In that case, the appellant challenged a Statute of Connecticut which permitted appeals in criminal cases to be taken by the State. Palko had been found guilty of murder in the second degree and sentenced to prison for life. Thereafter, under the Connecticut law, the State appealed and a new trial was granted due to errors during the first trial. At the second trial, Palko was found guilty of first degree murder and sentenced to death.

Palko claimed that this law subjected him to double jeopardy. He based his claim on the contention that the Fifth Amendment prohibition against double jeopardy was applicable to the States through the operation of the Fourteenth Amendment.

At this time, the Supreme Court decided that this part of the Fifth Amendment was not applicable to the States. Palko argued that the Fourteenth Amendment made the whole Bill of Rights, or at least the Fifth Amendment, applicable to the States. However the Court said at that time that the only parts of the first eight amendments which were applicable to the States were those involving a ". . . principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Citing *Hebert v. Louisiana*,

272 U.S. 312, 316. The Court decided that the type of double jeopardy involved in *Palko* did not violate those "fundamental principles of justice".

The most important thing to remember about *Palko* is that it involved a State prosecuting a man twice for the same offense.

The second case which must be discussed, *Bartkus*, involved a totally different concept, and one which the defendant fails to distinguish. In *Bartkus*, the appellant was tried in the Federal District Court for the Northern District of Illinois for robbery of a federally insured savings and loan association in violation of 18 U.S.C. §2113. The trial resulted in an acquittal. Thereafter, an Illinois grand jury indicted Bartkus, charging a violation of State robbery laws on the same set of facts. Bartkus was tried and convicted and was sentenced to life imprisonment.

The situation in *Bartkus* is almost identical with the one in the present case. In both situations, the crime involved was a bank robbery and the first trial was in the Federal Court. In both cases, a later trial was held in the State court for violations of State criminal laws arising out of the same transaction.

In 1959, the United States Supreme Court decided, in *Bartkus*, that the set of facts in that case did not constitute double jeopardy.

A reading of the *Bartkus* decision clearly reveals that it was the Court's opinion that successive State and Federal prosecutions could not be construed as double jeopardy, regardless of whether the Fourteenth Amendment included protection against double jeopardy. The decision traces the historic background of the role of dual sovereignty and of the right of both the Federal and State Governments to impose criminal sanction noting:

"While United States v. Lanza, 260 U.S. 377, was the first case in which we squarely held valid a federal

prosecution arising out of the same facts which had been the basis of a state conviction, the validity of such a prosecution by the Federal Government has not been questioned by this Court since the opinion in Fox v. Ohio, 5 How. 410, more than one hundred years ago.

"In Fox v. Ohio argument was made to the Supreme Court that an Ohio conviction for uttering counterfeit money was invalid. This assertion of invalidity was based in large part upon the argument that since Congress had imposed federal sanctions for the counterfeiting of money, a failure to find that the Supremacy Clause precluded the States from punishing related conduct would expose an individual to double punishment. Mr. Justice DANIEL, writing for the Court (with Mr. Justice McLEAN dissenting), recognized as true that there was a possibility of double punishment, but denied that from this flowed a finding of pre-emption, concluding instead that both the Federal and State Governments retained the power to impose criminal sanctions, the United States because of its interest in protecting the purity of its currency, the States because of their interest in protecting their citizens against fraud.

". . . The process of this Court's response to the Fifth Amendment challenge was begun in Fox v. Ohio, continued in United States v. Marigold, 9 How. 560, and was completed in Moore v. Illinois, 14 How. 13. Mr. Justice GRIER, writing for the Court in Moore v. Illinois, gave definitive statement to the rule which had been evolving:

" 'An offence, in its legal signification, means the transgression of a law.' 14 How., at 19.

" 'Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The

same act may be an offence or transgression of the laws of both.' 14 How., at 20.

" 'That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other.' *Ibid.*

"In a dozen cases decided by this Court between Moore v. Illinois and United States v. Lanza this Court had occasion to reaffirm the principle first enunciated in Fox v. Ohio. Since Lanza the Court has five times repeated the rule that successive state and federal prosecutions are not in violation of the Fifth Amendment. Indeed Mr. Justice HOLMES once wrote of this rule that it 'is too plain to need more than statement.' One of the post-Lanza cases, Jerome v. United States, 318 U.S. 101, involved the same federal statute under which Bartkus was indicted and in Jerome this Court recognized that successive state and federal prosecutions were thereby made possible because all States had general robbery statutes. Nonetheless, a unanimous Court, as recently as 1943, accepted as *unquestioned constitutional law that such successive prosecutions would not violate the proscription of double jeopardy included in the Fifth Amendment,* 318 U.S., at 105." (Emphasis added)

It is, therefore, clear that *Bartkus* held that successive State and Federal prosecutions were not violative of double jeopardy *even under the Fifth Amendment.* Therefore, this holding was not based merely on the *Palko* decision that the Fourteenth Amendment did not include the protection of the double jeopardy clause of the Fifth Amendment. It rested, rather on the concept of dual sovereignty which the Court had long recognized.

The Supreme Court, in 1969, clearly recognized the distinction between the *Palko* situation and the *Bartkus* situation, the latter being the same as the instant case. In that year, the Court decided the *Benton* case, which overruled *Palko*. In *Benton,* the Court finally decided that the double jeopardy provision of the Fifth Amendment, through the due process clause of the Fourteenth Amendment, prohibited a state from trying a defendant twice for the same act.

The court said that "Insofar as it is inconsistent with this holding, Palko v. Connecticut is overruled." *Benton,* supra, at 794. However, the Court clearly did not apply any prohibition to consecutive prosecutions by both the State and Federal Governments for having violated both the State law and the Federal law by the same acts. In *Benton,* in fact, the Supreme Court cited the *Bartkus* decision with regard to the historic origin of the double jeopardy guarantee and no intimation is made of any modification of that previous holding. Clearly, the Court recognized that there is a distinction between a State repeatedly retrying an individual for the same act and the dual sovereignty situation which *Bartkus* and the present case represent.

We hold therefore that the decision in *Benton v. Maryland,* supra, incorporating the double jeopardy clause of the Fifth Amendment into the due process clause of the Fourteenth Amendment, in no way modified the holding in *Bartkus v. Illinois,* supra, that prosecutions by both the Federal and State Governments for the violation of the laws of each did not constitute a violation of the double jeopardy clause of the Fifth Amendment. It is not material to the defendant's case that the Supreme Court held in *Benton* that the Fourteenth Amendment includes within its ambit the protection of that double jeopardy clause. The only new rule that *Benton* established was that a State could no longer repeatedly retry a man for a crime, a practice

which *Palko* had sanctioned. The overruling of *Palko* did not alter the rule established in *Bartkus.*

Therefore, the defendant's contention that his prosecution by the State subjected him to double jeopardy must be rejected. The sentences of the court below are affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

Appellant and another, bearing a shotgun and a pistol respectively, robbed the Crusader Savings and Loan Association in Philadelphia. They were indicted by the federal grand jury for violating 18 U.S.C. §2113(a), (b), and (d).[1] Following their indictment,

---

[1] "(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or

"Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

"(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

"Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

. . .

they pleaded guilty to all counts and were sentenced to a term of five years imprisonment. On the basis of the same acts, they were also indicted by the Philadelphia grand jury, for violating Sections 704 and 628(e) of The Penal Code. 18 P.S. §§4704 and 4628(c).[2] They pleaded guilty to these charges and were sentenced to five and three years concurrent terms of probation to follow the federal sentences. From judgment of sentence, this appeal followed.[3]

The question raised by this appeal is whether the Commonwealth may try a defendant following his trial by the federal government for the same acts. It has been held that due process does not prohibit such a trial. *Bartkus v. Illinois*, 359 U.S. 121 79 S. Ct. 676 (1959); *Commonwealth ex rel. Garland v. Ashe*, 344

---

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

[2] "Whoever robs another, or steals any property from the person of another, or assaults any person with intent to rob him, or by menace or force, demands any property of another, with intent to steal the same, is guilty of a felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding five thousand dollars ($5,000), or undergo imprisonment, by separate or solitary confinement, not exceeding ten (10) years, or both." Act of June 24, 1939, P. L. 872, §704.

"No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided . . . ." Act of June 24, 1939, P. L. 872, §628(e), as amended.

[3] It is not clear, on this record, whether appellant properly raised the plea of autrefois convict or double jeopardy. We have held, however, that we will consider such error unless competently and intelligently waived. *Commonwealth v. Yahnert*, 216 Pa. Superior Ct. 159, 264 A. 2d 180 (1970). There is no indication of such waiver in the record, especially in light of the recent developments in double jeopardy law.

Pa. 407, 26 A. 2d 190 (1942); *Commonwealth v. Taylor,* 193 Pa. Superior Ct. 360, 165 A. 2d 390 (1960). These cases, however, all relied upon the continued vitality of *Palko v. Connecticut,* 302 U.S. 319, 58 S. Ct. 149 (1937), which was overruled by *Benton v. Maryland,* 395 U.S. 784, 89 S. Ct. 2056 (1969).

*Palko's* overruling notwithstanding, it has been argued (as Judge CERCONE ably does) that the Fifth Amendment itself does not prohibit the Commonwealth's trying a defendant following his federal prosecution. Cf. *Abbate v. United States,* 359 U.S. 187, 79 S. Ct. 666 (1959); *United States v. Lanza,* 260 U.S. 377, 43 S. Ct. 141 (1922). A reading of *Abbate* and *Lanza* indicates, however, that they, just as much as *Bartkus,* relied upon the validity of the rationale in *Palko.* "We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory . . . Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other. It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government, . . . and the double jeopardy therein forbidden is a second prosecution under authority of the Federal Government after a first trial for the same offense under the same authority." 260 U.S. at 382, 43 S. Ct. at 142.

Today, the Fifth Amendment is a limitation upon both the federal and state governments. Regardless of the sources of these governments' power, each must treat an earlier prosecution by the other as a prior prosecution for double jeopardy purposes. If the

"peace and dignity" of these governments is affected differently by the same act, that is an issue touching the dimensions of the plea of double jeopardy and not its applicability.

In my opinion, therefore, the Fifth Amendment, now applicable to the states through the Fourteenth, requires that the plea of double jeopardy or autrefois acquit and convict be available to a state defendant after trial by the federal government. These pleas should, in most instances, constitute a bar to the state prosecution. See, e.g., *Rex v. Thomas*, 1 Keble 677, 83 Eng. Rep. 1180 (1663) ; *Rex v. Hutchinson*, 3 Keble 785, 84 Eng. Rep. 1011 (1677), reported in *Beak v. Thyrwhit*, 3 Mod. 194, 87 Eng. Rep. 124 (1688) ; *Rex v. Roche*, 1 Leach 134, 168 Eng. Rep. 169 (1775).

The constitutional dimensions of the pleas are not settled. It has been suggested that the state may be barred from prosecuting a defendant if he was tried by the federal court upon the "same evidence." Cf. *Hoag v. New Jersey*, 356 U.S. 464, 78 S. Ct. 829 (1958), ovr'd in *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189 (1970). It has also been suggested that the test be whether the "same transaction" is the subject of both prosecutions. *Waller v. Florida*, 297 U.S. 387, 396, 90 S. Ct. 1184, 1189 (1970) (BRENNAN, J., concurring). I have discussed both tests in an analogous context. *Commonwealth v. Brown*, 216 Pa. Superior Ct. 81, 84-86, 260 A. 2d 476, 477-478 (1969). Both tests fail because they fail to take into account the separate interests of the state and federal governments.[4] Cf. *Abbate v. United States*, 359 U.S. 187, 195, 79 S. Ct. 666, 671 (1959).

---

[4] In *Brown*, we faced the question whether two crimes were the "same offense" for the purposes of double jeopardy. I concluded there that the "same evidence" and "same transaction" tests failed to take into account the state's interests in defining crimes.

In my opinion, the state should be barred from prosecuting a defendant following a federal prosecution if the state is seeking to vindicate an interest not substantially different than the federal government's.[5]

[5] "As a means of achieving a satisfactory balance between considerations of federalism and the interests of the individual defendant, a 'separate interest' test applied to successive prosecutions by the state and federal governments has much to recommend it. If, for example, the federal interest to be vindicated by prosecution were substantially different from the state interest involved in the initial trial, successive trials would be allowed; if both the federal and state statutes represented similar policies, on the other hand, a second prosecution would be prohibited." Note, Double Prosecution by State and Federal Governments: Another Exercise in Federalism, 80 HARV. L. REV. 1538, 1561 (1967).

Compare the following: "[I]t is submitted that a foreign conviction for an offence committed abroad would and should be recognized so as to bar an English trial. No material harm will result from adopting such a position. English extraterritorial legislation can be divided into two basic categories: those where the aim is to see that there is at least one forum where the accused can be tried, and those where there is a sound reason for having a subsequent English trial; and in the latter, the foreign and English offences would not be considered the same." M. Friedland, Double Jeopardy 369 (1969).

The interest test would solve the difficulties expressed by Mr. Justice BRENNAN in Abbate. He feared that were the federal government barred from prosecuting following a state prosecution, then federal interests would be harmed in those cases where "the defendants' acts impinge more seriously on a federal interest than on a state interest." 359 U.S. at 195, 79 S. Ct. at 671. In such situations, where the interests are substantially different, there would be no bar.

This test should also solve the problem raised by the district attorney in his very able brief. "If this Court were to overrule Abbate, effective state and federal law enforcement would be greatly damaged. The prohibiting of successive prosecutions by dual sovereigns with separate interest would mean that, for example, an individual improperly freed by a state court for the murder of a civil rights worker could not be prosecuted by the federal government for violating the worker's federal civil rights. See, e.g., United States v. Guest, 383 U.S. 745 [86 S. Ct. 1170] (1966)." Given the test I have proposed, this problem answers itself.

This test adequately balances the different interests of the state and federal governments and the defendant's interest in avoiding multiple punishment and prosecution. Cf. *Commonwealth v. Brown*, supra [multiple punishment]; *Commonwealth v. Richbourg*, 217 Pa. Superior Ct. 96, 266 A. 2d 534 (1970) [multiple prosecution]. I further believe the judiciary are competent to apply the proposed test without undue delay.

In the instant case, a review of the statutes in footnotes 1 and 2 indicates that the federal and states prosecutions were designed to protect similar interests. The federal prosecution aimed at protecting banks from robbery and, particularly, robbery by dangerous weapon. The state prosecution aimed at protecting persons from robbery and from possible assaults by deadly weapon. Under the circumstances, since the interests sought to be protected were identical, the state prosecution should have been barred.

I would vacate judgment of sentence and discharge appellant from service of his probationary sentences.