Commonwealth *v.* Mills, Appellant.

Argued April 23, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, POMEROY and BARBIERI, JJ.

*Michael L. Levy,* Assistant Defender, with him *John W. Packel,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Mark Sendrow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, December 31, 1971:
The sole question presented by this appeal is whether or not a person may be convicted and punished in the courts of Pennsylvania if he has previously been convicted and punished in a federal court for the identical unlawful conduct.

The appellant, Ronald Edward Mills, was arrested with an accomplice for the robbery of a federally insured Savings and Loan Association in Philadelphia. They were indicted by the Commonwealth of Pennsylvania for violations of the state's criminal code, specifically, carrying a concealed deadly weapon, unlawfully carrying a firearm without a license and aggravated robbery.[1] They were also indicted by the United States

---

[1] Act of June 24, 1939, P. L. 872, §§628(e) and 704, 18 P.S. §§4628(e) and 4704.

Government for violating 18 U.S.C. §2113(a)(b) and (d), i.e., a bank robbery and assault.

On May 16, 1969, Mills plead guilty to the federal indictment and was sentenced to a term of five years imprisonment. Subsequently, he filed a motion in the state court to dismiss the indictments there pending against him on the ground that further prosecution would constitute double jeopardy. This motion was denied. Later, he plead guilty to these indictments and was sentenced on one to pay a fine, the costs of prosecution and serve a term of probation for five years to begin at the expiration of the sentence imposed in the federal court. On the other indictment, he was sentenced to a concurrent three-year period of probation. Mills filed an appeal in the Superior Court,[2] which subsequently affirmed the orders of the trial court. Judge HOFFMAN filed a dissenting opinion. See 217 Pa. Superior Ct. 269, 269 A. 2d 322 (1970). We granted allocatur.

In an almost identical factual situation, the United States Supreme Court in *Bartkus v. Illinois,* 359 U.S. 121, 79 S. Ct. 676 (1959), specifically ruled that successive prosecutions in federal and state courts do not constitute double jeopardy, and that the United States Constitution does not proscribe a prosecution and conviction in a state jurisdiction after there has been a prosecution and conviction in the federal courts for the same act. On the same day in *Abbate v. United States,* 359 U.S. 187, 79 S. Ct. 666 (1959), sanction was given to a prosecution and conviction in the federal courts after a prosecution and conviction had been effected in a state jurisdiction on the same facts. Both decisions cited the principle of "dual sovereignty" enun-

---

[2] While an order placing a criminal defendant on probation is not a judgment of sentence, it is an appealable order. *Commonwealth v. Vivian,* 426 Pa. 192, 231 A. 2d 301 (1967).

ciated in *United States v. Lanza,* 260 U.S. 377, 43 S. Ct. 141 (1922), wherein the court stated:

"We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject matter within the same territory. . . . Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

"It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each."

Aside from challenging the correctness of the ruling in *Lanza and Bartkus,*[3] appellant contends that more recent decisions specifically *Elkins v. United States,* 364 U.S. 206, 80 S. Ct. 1437 (1960), and *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S. Ct. 1594 (1964) have so eroded the "dual sovereignty" concept formulated in *Lanza* that it is no longer viable.

While two members of the United States Supreme Court who joined in the *Bartkus* opinion have expressed this same view (see *Stevens v. Marks,* 383 U.S. 234, 250, 86 S. Ct. 788, 797 (1966) (concurring opinion)), and it would appear that *Elkins* and *Murphy*[4] have at least undermined the "dual sovereignty" doctrine, we think that these cases are distinguishable and have not disturbed the ruling in *Bartkus.* In the cases referred to

---

[3] The decisions in *Bartkus* and *Abbate* have been subject to criticism. See Note, Double Prosecution by State and Federal Governments; Another Exercise in Federalism, 80 Harvard L. Rev. 1538 (1967).

[4] *Elkins* held that evidence seized by a state official and introduced during a prosecution in the federal courts is subject to Fourth Amendment scrutiny, *Murphy* held that a state court may not constitutionally compel a witness given immunity from prosecution under its law to give testimony that might be used against him in the federal courts.

"the prosecuting jurisdictions were attempting to use the efforts of the other jurisdiction for its own purposes, whereas in the case of successive prosecutions, in accordance with the basic assumption of the dual sovereignties doctrine, the prosecuting jurisdiction may be acting independently of the other." 80 Harvard L. Rev., supra, at 1548.

Appellant further urges that if the situation is viewed realistically, successive prosecutions for the same act do constitute double jeopardy and since *Benton v. Maryland,* 395 U.S. 784, 89 S. Ct. 2056 (1969), are no longer constitutionally permissible. At least one jurisdiction has reached this same conclusion. See *State v. Fletcher,* 22 Ohio App. 2d 83, 259 N.E. 2d 146 (1970). However, as to this, we agree with the thinking of Judge CERCONE, as expressed in the opinion for the majority of the Superior Court, namely, that this position fails to recognize the real foundation of successive prosecutions by the state and federal governments, i.e., dual sovereignty and that the *Bartkus* decision "clearly reveals that it was the Court's opinion that successive state and federal prosecutions could not be construed as double jeopardy. . . ." 217 Pa. Superior Ct. 273. Moreover, *Benton* did not specifically overrule *Bartkus,* and in *Waller v. Florida,* 397 U.S. 387, 90 S. Ct. 1184 (1970), which was subsequent to *Benton,* the Court impliedly recognized the continued viability of *Bartkus.* Significantly also, the United States Supreme Court recently denied certiorari in five cases wherein the appellants sought to have the Court reverse the "dual sovereignty" concept recognized in *Bartkus.* See *Bechtel Corporation v. New Jersey; Leuty v. New Jersey; Feldman v. New Jersey; Colonal Pipeline Company v. New Jersey;* and, *Jacks v. New Jersey;* all of which are noted in 10 Crim. L. Rptr. 4010 (1971). Additionally, other courts of recognized merit, after studied consideration

of the problem, have concluded that *Bartkus* is still the law. For example, see *United States v. Ward,* 314 F. Supp. 261 (E.D. La. 1970); *Whatley v. United States,* 428 F. 2d 806 (5th Cir. 1970); *States ex rel. Cullen v. Ceci,* 45 Wis. 2d 432, 173 N.W. 2d 175 (1970).

However, while we conclude that *Bartkus* is still the law and that successive prosecutions by the federal and state governments for the same offense do not constitute double jeopardy, we are not persuaded that the orders in the instant case should be permitted to stand for the following reasons.

When one examines the "dual sovereignty" doctrine as it applies to the double jeopardy clause, we are really involved in a balancing process, whereby we place the interests of the two sovereigns on one side of the judicial scale, and on the other side we place the interest of the individual to be free from twice being prosecuted and punished for the same offense. The basic problem with *Bartkus* is that the majority first failed to recognize that the interests of the two sovereigns might be the same, but more important, they secondly failed to really examine the interest of the individual.

The double jeopardy clause breaks down into three general rules which preclude a second trial or a second punishment for the same offense: (1) retrial for the same offense after acquittal; (2) retrial for the same offense after conviction; (3) multiple punishment for the same offense at one trial. The judiciary views these rules as expressions of self-evident moral precepts: It is wrong to retry a man for a crime of which he previously has been found innocent, wrong to harass him with vexatious prosecution, and wrong to punish him twice for the same offense. The policies which underlie the prohibition are first, guilt should be established by proving the elements of a crime to the satisfaction

of a single jury, not by capitalizing on the increased probability of conviction resulting from repeated prosecutions before many juries; second, the authorities should not be able to search for an agreeable sentence by bringing successive prosecutions for the same offense before different juries; and third, criminal trial should not become an instrument for badgering individuals. See generally, Comment, Twice in Jeopardy, 75 Yale L. J. 262, 265-67 (1966); Comment, Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee, 65 Yale L.J. 339, 339-41 (1956).

The striking feature of the aforementioned rules and policies is that the focus is always on the individual; on a person's basic and fundamental rights. This feature is the common thread that runs across all of the provisions of the Bill of Rights, and we believe this is the element the Supreme Court failed to adequately consider in *Bartkus.*

Mr. Justice FRANKFURTER, not once in his majority opinion in *Bartkus* refers to the interest of the individual, he consistently focused on the interests of the Federal and State governments, and, for the purposes of double jeopardy, transformed one act into two. The late Mr. Justice BLACK in his dissent, however, by focusing on the individual points out that it makes little difference to a defendant who is prosecuting the case, the simple fact is there is double prosecution and possibly double punishment. We are talking about the two governments protecting their interests, when we really should be talking about the individual, since by focusing on the individual we see that it matters little where he is confined—in a federal or state prison—the fact is that his liberty is taken away twice for the same offense.

It appears to us that the only penological justification for permitting a second prosecution and punishment for the same offense even where different sovereigns are involved is out and out punishment, and we certainly hope that at this late date in the history of the development of the penal system of this Commonwealth and the Nation, that incarceration for a criminal act stands on stronger footing than—an eye for an eye. We can assume that normally double prosecutions will involve felonies less than homicides, and when dealing with such felonies the primary goal for imprisonment must be reform and rehabilitation. In our view, placing an individual in a state prison after he had been incarcerated in a federal prison for the same offense is not in any way going to aid in his reformation and rehabilitation. If anything, after the second term of imprisonment, he will be more of an acomplished criminal, and he will also be much more embittered against everything our government stands for, as well as against society in general; thus, we have really defeated our own purpose.

There are other valid considerations which militate against permitting the second prosecution and punishment for the same offense: (1) It is in derogation of the principle that "no one should be twice vexed for the one and the same cause"; and (2) It destroys finality from the individual's standpoint and permits the governments with all their resources and power to make repeated attempts to convict, thus subjecting the accused to live in a continuous state of anxiety, insecurity and possible harassment.

After giving careful consideration to all factors involved, we now rule, that henceforth in Pennsylvania, a second prosecution and imposition of punishment for the same offense will not be permitted unless it appears from the record that the interests of the Commonwealth

of Pennsylvania and the jurisdiction which initially prosecuted and imposed punishment are substantially different.[5] In other words, if it appears that the interests of this Commonwealth were not sufficiently protected in the initial prosecution, then a second prosecution and imposition of additional punishment in Pennsylvania will be allowed. Since the record in the instant case fails to manifest that the interests of Pennsylvania were not fully protected by the initial prosecution in the federal courts, the convictions and punishment imposed cannot stand.[6]

The order of the Superior Court and the orders of the court of original jurisdiction are vacated.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the result suggested in the majority opinion.

I agree that *Bartkus v. Illinois*, 359 U.S. 121, 3 L. Ed. 2d 684 (1959), continues to stand as valid authority for the proposition that the federal double jeopardy proscription places no constitutional restriction on a state criminal prosecution initiated subsequent to a conviction in a United States court for the same of-

---

[5] In this connection it is interesting and significant that following the decision in *Abbate v. United States*, supra, the United States Department of Justice issued a policy statement through Attorney General William P. Rogers, stating that the power to prosecute a defendant under both state and federal law "has been used sparingly by the Department of Justice in the past" and will not be done in the future "unless the reasons are compelling". Press Release, New York Times, April 6, 1969, page 1, column 4, page 19, column 1.

[6] An order placing a criminal defendant on probation constitutes "punishment" in this context. *Commonwealth v. Vivian*, supra, n. 2 at 200.

fense. In this vexing field of multiple prosecutions in our federal system, the effect of *Bartkus* was to leave a state free, in the words of Mr. Justice FRANKFURTER, "to develop a rational and just body of criminal law in the protection of its citizens" without federal interference. *Supra,* at pp. 138-139. Thus a state may properly determine that prosecution by it for an offense previously prosecuted under federal law is a procedure to be used sparingly, and then only within a limited context.[1] I am satisfied that the time has come for Pennsylvania to take such a position.

I do not minimize the difficulties in articulating the standards by which prosecuting attorneys and trial judges should be governed in determining when a second prosecution will be instituted or permitted. These problems are spelled out both in the cases and the literature on the subject. While the interest analysis approach recommended in the court's opinion has merit in the abstract, it will, I fear, prove difficult in application. I think more specific guidelines should be established, if not by statute, then by judicial decision. A commendable effort to set forth such guidelines was made by the American Law Institute in its *Model Penal Code,* §1.10 (Proposed Official Draft, 1962), quoted in the margin.[2] In my view these standards, or

---

[1] As the opinion in *Bartkus* observes, a number of states have statutes which bar a second prosecution if the defendant has been once tried by another government for a similar offense.

[2] "Section 1.10. Former Prosecution in Another Jurisdiction: When a Bar.

"When conduct constitutes an offense within the concurrent jurisdiction of this State and of the United States or another State, a prosecution in any such other jurisdiction is a bar to the subsequent prosecution in this State under the following circumstances:

"(1) The first prosecution resulted in an acquittal or in a conviction as defined in Section 1.08 and the subsequent prosecu-

some similar statement as to the effect of a former prosecution, merit adoption in Pennsylvania. This section has been incorporated, practically verbatim, as Section 111 of a proposed new Pennsylvania Crimes Code now pending in the General Assembly (Senate Bill No. 455, as amended November 29, 1971—Printer's No. 1379). If this section of the Bill were now the statutory law of the Commonwealth, it would undoubtedly require vacation of the orders now before us, for Mills' offense does not come within the exceptions of the proposed new section. In the meantime, I am satisfied that it is properly within the judicial competence to hold that Mills should not be prosecuted for the offense charged, and I accordingly concur in vacating the orders below.

---

tion is based on the same conduct, unless (a) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil or (b) the second offense was not consummated when the former trial began; or

"(2) The former prosecution was terminated, after the information was filed or the indictment found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the offense of which the defendant is subsequently prosecuted." See also the Comment to this section (then identified as §1.11) appearing in Tentative Draft No. 5 of the *Model Penal Code* (1956), at pp. 60-63. *Compare* the formulation of standards more recently set forth in §§706 and 707 of *Study Draft of a New Federal Criminal Code*, by the National Commission on Reform of Federal Criminal Laws (U. S. Government Printing Office, 1970), and commentary thereto in 1 *Working Papers of the National Commission on Reform of Federal Criminal Laws*, 346-348 (1970).

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

This case is undoubtedly governed and ruled by *Bartkus v. Illinois,* 359 U.S. 121, and *Abbate v. United States,* 359 U.S. 187, which hold that a person can be indicted and tried for the same crime in both Federal and State Courts. While I think they should be reversed or modified, I cannot go as far as the Majority do, and I believe the test which the Majority adopt (prospectively, and apply retroactively) is so indefinite and so subject to Judicial caprice that I must dissent for each of these reasons.

---

DISSENTING OPINION BY MR. JUSTICE BARBIERI:

I dissent, because I think the majority has in this case propounded a double jeopardy rule which not only puts Pennsylvania in a unique and anomalous position in dual sovereignty cases, but which, more importantly, is both technically impractical and substantively fraught with unnecessary opportunities for inequality in the treatment of offenders.

First, double jeopardy in Pennsylvania dual sovereignty cases will now be a factual issue for the trial judge rather than a clear question of law. In order to rule on a double jeopardy plea in Pennsylvania the court must review and pass judgment upon the sentence imposed by another court in the judicial system of a separate sovereign. The Pennsylvania judge must review the other judge's sentence, and presumably the entire penal, probation and parole apparatus applicable to that sentence, for, under the majority rule, "if it appears that the interests of this Commonwealth were not sufficiently protected in the initial prosecution, then a second prosecution and imposition of additional punishment in Pennsylvania will be allowed". This makes the application of a constitutional safeguard depend, not upon guilt, or upon conviction or acquittal

in a prior proceeding, but upon the nature of the punishment or sentence previously ordered, and on how the Pennsylvania judge views the other sovereign's solution for guilt determined under that sovereign's laws and procedures.

One may ask what might be our course in a case like this one where we have ruled out guilt as an issue under Pennsylvania law, only to find that the conviction by the other court has later been set aside, or that the sentence in that case has been so altered as to no longer protect "the interests of this Commonwealth?" Who then will look out for the "interests of the Commonwealth", if we have lapsed our judicial responsibility to do so by a double jeopardy ruling in a preliminary proceeding?

Secondly, I see serious opportunities for injustice to result from inequality of treatment under the view adopted by the majority. For example, two defendants in the same bank robbery who are guilty of the same offense may well have unequal treatment depending solely upon the result of a race for forum. Thus, one who is tried first in the Federal court system may successfully interpose a double jeopardy plea in our courts, whereas one who is tried first in our court will have no such plea available to him in a subsequent Federal proceeding.

Furthermore, I am unable to see how any advantage can be gained in the trial judge's exercise of his duty to protect both the defendant and the Commonwealth by the process which I envision will result from the majority's rule. In my view both can best be protected by continuing to have Pennsylvania guilt proceedings as heretofore, with the trial judge retaining his traditional discretion in his sentencing procedures to decide what new measures, if any are needed, will sufficiently protect "the interests of this Commonwealth".

As is pointed out in the majority's able and thorough presentation of the law on this double jeopardy question, the dual sovereignty distinction where state and federal court's are concerned is still observed in United States and other state courts in this country; and, as the majority points out, the case of *Bartkus v. Illinois*, 359 U.S. 121, 79 S. Ct. 676 (1959), is still viable despite many and recent efforts to change it.

I would sustain the action of the Superior Court in affirming the sentences of the trial court.