568 P.2d 199
**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**David Wodajo ROGERS,**
**Defendant-Appellant.**

**No. 2652.**

Court of Appeals of New Mexico.

Feb. 15, 1977.

**674**

Toney Anaya, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jan A. Hartke, Chief Public Defender, Reginald J. Storment, App. Defender, Santa Fe, for defendant-appellant.

## OPINION

WOOD, Chief Judge.

Defendant was convicted of receiving stolen property by disposing of it. Section 40A–16–11, N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1975); *State v. Tapia,* 89 N.M. 221, 549 P.2d 636 (Ct.App.1976). He was also convicted of kidnapping. Section 40A–4–1, N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1975). The transcript does not support the claim that reversible error resulted from an accumulation of instances of alleged prosecutor misconduct. The transcript is insufficient to review the claim that the trial court improperly restricted the questioning of prospective jurors concerning pretrial publicity. We do not know what questions were asked or what line of questioning was limited. See *State v. Carrillo,* 88 N.M. 236, 539 P.2d 626 (Ct.App.1975); *State v. Romero,* 86 N.M. 99, 519 P.2d 1180 (Ct.App.1974). The dispositive issue involves New Mexico's prosecution of defendant after he had been acquitted of federal charges. This issue involves: (1) exhibits to briefs, (2) double jeopardy, (3) collateral estoppel, and (4) judicial policy.

In January, 1976 a branch of a national bank in Albuquerque was robbed of a substantial sum of money at gunpoint. During the course of the robbery, two employees of the bank were required, at gunpoint, to do certain things against their will. Examples of this forced action are: (1) requiring the employees to return to the inside of the bank after they had exited the bank building for the day, and (2) requiring one of the employees to telephone for the combination of the bank vault.

Defendant was indicted for violating certain provisions of 18 U.S.C.A. § 2113 (1970).

Trial was in the United States District Court for the District of New Mexico. The federal jury found defendant not guilty of the federal charges. Subsequent to the federal trial, New Mexico indicted and tried defendant on the two charges of which he has been convicted.

*Exhibits to Briefs*

■ Throughout the proceedings in New Mexico courts, defendant has claimed that acquittal on the federal charges barred the New Mexico prosecutions. In support of this contention, defendant has filed Exhibit A to the brief-in-chief. This exhibit purports to be the transcript of the federal trial. The transcript of the New Mexico trial does not show that the federal trial transcript was either identified or tendered as an exhibit. Exhibit A to the brief-in-chief will not be considered. *Baca v. Swift & Company,* 74 N.M. 211, 392 P.2d 407 (1964); *Vivian v. Atchison, Topeka and Santa Fe Railway Co.,* 69 N.M. 6, 363 P.2d 620 (1961).

*Double Jeopardy*

■ Defendant asserts that the New Mexico prosecution amounts to double jeopardy. The federal charges involved bank robbery contrary to paragraphs (a) and (d) of 18 U.S.C.A. § 2113 (1970). Assuming that the New Mexico charges were based on the "same transaction" as the federal charges, neither the receiving nor the kidnapping convictions are based on the "same evidence" as the federal charges. New Mexico has rejected the "same transaction" test; rather, double jeopardy is defined in terms of the "same evidence". *State v. Tanton* (hereinafter *Tanton I*), 88 N.M. 5, 536 P.2d 269 (Ct.App.1975), overruled in part in *State v. Tanton* (hereinafter *Tanton II*), 88 N.M. 333, 540 P.2d 813 (1975). There was no violation of double jeopardy as that term has been defined in New Mexico.

*Collateral Estoppel*

■ Defendant contends that the New Mexico prosecution was barred by the doc-trine of collateral estoppel. This doctrine bars relitigation between the same parties of issues actually determined at a previous trial. *State v. Tijerina,* 86 N.M. 31, 519 P.2d 127 (1973). To decide what had been "actually determined" in the prior trial, ordinarily the record of the prior proceedings would have to be examined. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Such an examination was not done in this case because the record of the federal proceedings was never presented to the trial court. However, the failure to present the federal proceedings does not bar review of the collateral estoppel question.

The collateral estoppel issue is before us on the basis of the State's concession designed "to clarify and simplify the issues, that there was no rational basis for the Federal jury's verdict other than the Defendant was not present at the bank." We agree with the concession; there is nothing indicating that the armed bank robbery did not occur or that the employees were not victims of that crime. The only rational basis for the federal verdict was that defendant was not the one who robbed the bank. Compare *Ashe v. Swenson, supra.*

■ The receiving by disposing conviction is not affected by the determination that defendant was not the robber. Defendant was neither charged nor prosecuted in federal court for disposing of stolen property. See paragraph (c) of 18 U.S.C.A. § 2113 (1970). New Mexico's receiving by disposing prosecution is the first prosecution for that offense. Defendant could dispose of stolen property without robbing the bank. See *State v. Tapia, supra.* The "disposing" issue was not actually determined at the federal trial; the doctrine of collateral estoppel is not applicable to the receiving by disposing conviction.

The kidnapping conviction is affected by the determination that defendant was not the robber. Under the jury instructions, the kidnapping conviction is necessarily based on holding the bank employees to service against their will. See § 40A–4–1, *supra.* This holding to service was done by

the bank robber; if defendant was not the robber, he did not hold the employees to service. In determining that defendant was not the bank robber, the federal jury actually determined that defendant was not the person who kidnapped the bank employees.

The federal jury determination that defendant was not the bank robber (and therefore not the kidnapper) is not disputed by the State. Rather, it relies on the definition of collateral estoppel—the doctrine bars relitigation *between the same parties* of issues actually determined. This limitation appears in both *State v. Tijerina, supra,* and *Ashe v. Swenson, supra.* The State points out that dual sovereigns were involved—the United States and New Mexico; because separate sovereigns were involved in the prosecution of defendant, the State claims that it is not collaterally estopped to prosecute defendant on the kidnapping charge.

*Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) supports the State. Bartkus was charged with violating the same statute as defendant—18 U.S.C.A. § 2113. The federal jury acquitted. Illinois charged Bartkus with violating an Illinois robbery statute. "The facts recited in the Illinois indictment were substantially identical to those contained in the prior federal indictment." The United States Supreme Court held that the successive trials of Bartkus did not deprive him of due process.

*Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) held that a subsequent federal prosecution growing out of identical facts involved in a prior state conviction did not violate double jeopardy.

In limiting the doctrine of collateral estoppel to the same parties, *Ashe v. Swenson, supra,* does not conflict with either *Bartkus, supra,* or *Abbate, supra.* In addition, the dual sovereign approach has been applied subsequent to *Ashe v. Swenson, supra. United States v. James,* 532 F.2d 1161 (7th Cir. 1976); *United States v. Johnson,* 516 F.2d 209 (8th Cir. 1975); see authorities cited in *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971). The separate sovereign concept has been rejected as between a state and a municipality. *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). This rejection, however, does not appear to have affected the distinction made between the federal government and a state government. *United ed States v. Villano,* 529 F.2d 1046 (10th Cir. 1976); Compare *United States v. Leeds,* 505 F.2d 161 (10th Cir. 1974).

■ On the basis of the above authorities, the kidnapping conviction was not barred by the doctrine of collateral estoppel; different parties (separate sovereigns) were involved in the two prosecutions.

*Judicial Policy*

Although the New Mexico kidnapping charge was not barred by the doctrine of collateral estoppel, there is the question of whether judicial policy should bar the kidnapping conviction. If the acquittal on the robbery charges had occurred in a New Mexico court, the doctrine of collateral estoppel would have barred the kidnapping charges. Should the result be different because a different sovereign brings the subsequent prosecution? Our concern is with judicial policy which opposes piecemeal prosecutions; that policy is discussed in *Tanton I* and *Tanton II, supra.* Justice Black, dissenting in *Bartkus v. Illinois, supra,* stated:

"Fear and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization. Its roots run deep into Greek and Roman times. Even in the Dark Ages, when so many other principles of justice were lost, the idea that one trial and one punishment were enough remained alive through the cannon law and the teachings of the early Christian writers. By the thirteenth century it seems to have been firmly established in England, where it came to be considered as a 'universal maxim of the common law.' It is not surprising, therefore, that the principle was brought to this country by the earliest settlers as part of their heritage of freedom, and

that it has been recognized here as fundamental again and again. Today it is found, in varying forms, not only in the Federal Constitution, but in the jurisprudence or constitutions of every State, as well as most foreign nations. It has, in fact, been described as a part of all advanced systems of law and as one of those universal principles 'of reason, justice, and conscience, of which Cicero said: "Nor is it one thing at Rome and another at Athens, one now and another in the future, but among all nations it is the same." ' While some writers have explained the opposition to double prosecutions by emphasizing the injustice inherent in two punishments for the same act, and others have stressed the dangers to the innocent from allowing the full power of the state to be brought against them in two trials, the basic and recurring theme has always simply been that it is wrong for a man to 'be brought into Danger for the same Offence more than once.' Few principles have been more deeply 'rooted in the traditions and conscience of our people.'

"The Court apparently takes the position that a second trial for the same act is somehow less offensive if one of the trials is conducted by the Federal Government and the other by a State. Looked at from the standpoint of the individual who is being prosecuted, this notion is too subtle for me to grasp. If double punishment is what is feared, it hurts no less for two 'Sovereigns' to inflict it than for one. If danger to the innocent is emphasized, that danger is surely no less when the power of State and Federal Governments is brought to bear on one man in two trials, than when one of these 'Sovereigns' proceeds alone. In each case, inescapably, a man is forced to face danger twice for the same conduct.

"The Court, without denying the almost universal abhorrence of such double prosecutions, nevertheless justifies the practice here in the name of 'federalism.' This, it seems to me, is a misuse and desecration of the concept. Our Federal Union was conceived and created 'to establish Justice' and to 'secure the Blessings of Liberty,' not to destroy any of the bulwarks on which both freedom and justice depend. We should, therefore, be suspicious of any supposed 'requirements' of 'federalism' which result in obliterating ancient safeguards. I have been shown nothing in the history of our Union, in the writings of its Founders, or elsewhere, to indicate that individual rights deemed essential by both State and Nation were to be lost through the combined operations of the two governments." [359 U.S. at 151, 79 S.Ct. at 696, 3 L.Ed.2d at 706–708]

*United States v. Watts*, 505 F.2d 951 (5th Cir. 1974) affirmed a federal conviction after a prior acquittal in Georgia. The United States Supreme Court vacated the conviction at the request of the Solicitor General. The conviction was not vacated because the conviction was barred by legal doctrine; it was vacated because the conviction did not conform to Department of Justice policy of not prosecuting individuals previously tried in state court unless compelling reasons existed for such a prosecution. *Watts v. United States*, 422 U.S. 1032, 95 S.Ct. 2648, 45 L.Ed.2d 688 (1975).

*Commonwealth v. Mills, supra,* discussed policy considerations different than those stated by Justice Black in the above quotation. Yet, the Pennsylvania court in *Mills, supra,* held that as a matter of judicial policy it would bar a subsequent prosecution unless the interests of Pennsylvania were substantially different than the interests involved in the prior prosecution. *Mills, supra,* involved a prior federal conviction. In *People v. Cooper,* 398 Mich. 450, 247 N.W.2d 866 (1976), Michigan followed *Mills, supra,* in a case involving a prior acquittal in federal court.

The reasoning in *Commonwealth v. Mills, supra,* and *People v. Cooper, supra,* gave an expansive meaning to double jeopardy. We cannot adopt such reasoning because *Tanton II, supra,* defined double jeopardy in limited terms. This does not, however, bar this Court from considering double prosecutions in terms of policy.

The policy consideration is this: If the doctrine of collateral estoppel would bar New Mexico from prosecuting a defendant a second time, and the doctrine is inapplicable solely because of the concept of dual sovereignty, should the second prosecution be permitted? We adopt the reasoning of Justice Black in his dissent in *Bartkus v. United States, supra*. Except for the dual sovereign concept, the New Mexico prosecution for kidnapping would have been barred. In this situation, we hold as a matter of policy that the prosecution for kidnapping is barred. The statement of Department of Justice policy in *Watts v. United States, supra, Commonwealth v. Mills, supra*, and *People v. Cooper, supra*, support this result.

The conviction for receiving stolen property is affirmed. The kidnapping conviction is reversed. The cause is remanded for entry of an amended judgment and sentence consistent with this opinion.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.