466 A.2d 644

**COMMONWEALTH of Pennsylvania**

**v.**

**Robert H. ABBOTT, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 22, 1982.

Filed Sept. 30, 1983.

480

Alan Ellis, Philadelphia, for appellant.

Kenneth A. Osokow, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Before CAVANAUGH, McEWEN and HOFFMAN, JJ.

McEWEN, Judge:

This is an appeal brought by a Post Conviction Hearing Act Petitioner from an order which granted the Petitioner the right to withdraw a guilty plea but denied a request to dismiss the charges. Appellant argues that the Common Pleas Court erred when it rejected the contention that section 111 of the Crimes Code, 18 Pa.C.S.A., and principles of double jeopardy require that the charges filed against the appellant be dismissed. We reverse.

## I.

Appellant, Robert H. Abbott, a seventy-five year old Doctor of Osteopathy, was arrested and charged on April 17, 1975, with forty-seven violations of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act[1]. He was so charged after he had unlawfully prescribed and dispensed certain controlled substances and other drugs to four undercover agents during a six month period from October 1974 to April 1975. As a result of certain of these transactions, a Federal Grand Jury indicted appellant on six counts of violations of the federal drug laws.[2] He was found guilty of these federal charges by a jury and on July 11, 1975, was sentenced to a term of imprisonment of

1. 35 P.S. § 780–101 *et seq.*

2. 21 U.S.C.A. § 841(a)(1).

fifteen years and fined $90,000.[3]  Six months after the federal jury verdict of guilty, on December 5, 1975, a hearing was held upon the state charges at which time the Common Pleas Court granted a motion by the Commonwealth to dismiss twenty of the forty-seven counts in the state bill of indictment and appellant thereupon pleaded guilty to the remaining twenty-seven counts.  The Common Pleas Court sentenced appellant to a term of imprisonment of not less than seven and a half years nor more than fifteen years, to run concurrently with the sentence imposed by the federal court, and fined appellant $90,000.00.

When appellant was released from his confinement and transferred to state custody to continue serving the term of imprisonment imposed for the state charges, he filed a series of Post Conviction Hearing Act petitions which alleged, *inter alia,* that prior counsel was ineffective during the guilty plea proceedings when counsel failed to insure that appellant knowingly and voluntarily pleaded guilty and that prior counsel was ineffective for not pursuing a dismissal of the charges on the basis of federal [4] and state [5] proscriptions against double jeopardy and on the basis of section 111 of the Crimes Code, 42 Pa.C.S.A.[6]  The distinguished Judge Thomas C. Raup granted appellant the right to withdraw the guilty plea that had been entered to the twenty-seven counts [7] but found that there was no merit to the contention that prior counsel had been ineffective by reason of his failure to pursue the motion to dismiss those twenty-seven counts, the charges remaining after the Com-

---

**3.**  No appeal was taken from the judgment of sentence imposed by the federal court.

**4.**  U.S. Const. amends. V, XIV.

**5.**  Pa. Const. art. 1, § 10.

**6.**  Section 111 of the Crimes Code, 18 Pa.S.C.A., is entitled "When Prosecution barred by former prosecution in another jurisdiction." *See* p. 648 *infra.*

**7.**  The Commonwealth had acknowledged that the guilty plea colloquy was defective.

monwealth had dismissed twenty of the forty-seven charges.

Appellant contends that while prior counsel had filed a motion to dismiss all forty-seven counts of the indictment on double jeopardy grounds, prior counsel became ineffective when he elected to abandon this issue and permitted appellant to plead guilty.[8]  Although prior counsel had challenged all forty-seven of the state charges in the motion to dismiss upon grounds of double jeopardy, the Common Pleas Court never ruled on this motion, but instead granted the motion of the Commonwealth, presented at the guilty plea proceeding, to dismiss twenty of the counts of the bill of indictment[9] and accepted the plea of guilty by appellant to the remaining twenty-seven charges.  Appellant argues that prior counsel was ineffective for failing to persist in the effort to have the remaining twenty-seven state charges dismissed upon grounds of double jeopardy or upon the basis of the statutory bar to further prosecution.

It would appear considerably more expeditious for this court to treat this post-conviction hearing appeal as though it were an appeal from a denial by the trial court of a petition for dismissal of the charges by reason of the protection against double jeopardy or by reason of the statutory bar to further prosecution.  If we were to affirm the order of the hearing court and conclude that the interpretation of the double jeopardy bar and/or the statutory bar against further prosecution had not been so clear in 1975 that plea counsel may not be deemed to have been ineffective, present counsel for appellant would then be obliged to proceed to petition the trial court for dismissal of the charges by reason of the bar against double jeopardy and/or the statutory bar against further prosecution.  And it is quite predictable, of course, that whatever the determi-

8. Additional grounds were asserted in the motion to dismiss in support of the dismissal of five of the charges.

9. The prosecutor concluded that the Commonwealth could not proceed on the twenty counts since the Federal authorities prosecuted appellant for offenses committed on the same dates as those charged in these twenty state counts.

nation of the trial court upon such a petition for dismissal, this case and the basic issue it presents would once again appear in this court in but a slightly different posture. We will, therefore, here rule upon the fundamental issue presented, namely, is the further prosecution of appellant precluded either by the statutes of this Commonwealth or by the constitutional protection against double jeopardy.

Our study requires a careful analysis of the nature and of all of the facts and circumstances surrounding both the federal and state charges. The following distinctions in the proceedings brought by the two sovereigns are to be noted:

> While the Commonwealth charged appellant with violations spanning a six month period, from October 27, 1974 through April 10, 1975, the federal prosecution is based upon violations occurring during the six week period between March 6, 1975 and April 17, 1975.
>
> The federal charges related solely to the distribution of phendimetrazine, while the Commonwealth charged appellant with violations involving phendimetrazine as well as quaalude, eskatrol, fastin, sanorex, fendi, dilaudid and dalmene.
>
> Only one undercover agent was involved in the federal charges, whereas the state bills of information included sales to this agent as well as three other agents.
>
> The federal charges related solely to the distribution of drugs, while the state bills of information included distribution charges as well as the misbrandinng of drugs and the destruction of labels on drugs.

Despite these differences, both the federal and state charges resulted from one continuing undercover investigation of appellant by one team of the same four state agents.

The Common Pleas Court determined that the state charges to which appellant pleaded guilty were not based upon the same conduct as that for which appellant had been convicted by the federal authorities. The court thereby concluded that there was no bar to a prosecution by the Commonwealth upon the twenty-seven state charges to which appellant had pleaded guilty since each of these

charges stemmed from "totally separate episodes involving different drugs and occurring on dates as much as five months apart ... [E]ach offense was distinct, separate from the others and the conduct proscribed by the Federal Statute was different from that proscribed by the Commonwealth Statute."

## II.

The principle of double jeopardy has in recent years received careful attention from not only the judiciary but also from our legislature. The Pennsylvania Supreme Court in 1971 provided a further dimension to the principle when it was confronted by a Commonwealth effort to prosecute for criminal behavior for which the federal government had already prosecuted and imposed punishment. That court, in *Commonwealth v. Mills,* 447 Pa. 163, 169, 286 A.2d 638, 641 (1971), proclaimed that as long as the initial federal prosecution provides for the protection of the joint interest of both the federal government and of the Commonwealth, a subsequent prosecution by the Commonwealth would be banned.[10] The legislature addressed the issue of double jeopardy the following year when it specified the conditions under which subsequent prosecutions would be barred and in section 111 of the Crimes Code, 1972 Dec. 6, P.L. No. 334, § 1, effective June 6, 1973, decreed the conditions under which a former prosecution in another

**10.** At the time that the Pennsylvania Supreme Court decided *Mills,* the view of the United States Supreme Court on double jeopardy was as announced in *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), namely, that the federal Fifth Amendment provision against double jeopardy was not applicable to the states through the Fourteenth Amendment and that "dual sovereignty" also allowed successive federal and state trials for the same crime. While the United States Supreme Court in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), subsequently ruled that the Fifth Amendment protection was applicable to the states through the Fourteenth Amendment, that Court has not altered its "dual sovereignty" holding. See *Commonwealth v. Grazier,* 481 Pa. 622, 393 A.2d 335 (1978). In addition, numerous state courts have held that a state prosecution subsequent to federal prosecution does not constitute a violation of a defendant's constitutional protection against being placed in double jeopardy. Annot., 6 A.L.R.4th 806 (1981).

jurisdiction would serve as a bar to a subsequent prosecution in the Commonwealth. Since that time, appellate study of and expression upon both *Mills, supra,* and the statute have shaped the current posture of the protection from double jeopardy in Pennsylvania. *Commonwealth v. Hude,* 500 Pa. 482, 458 A.2d 177 (1983); *Commonwealth v. Grazier,* 481 Pa. 622, 393 A.2d 335 (1978); *Commonwealth v. Mascaro,* 260 Pa.Super. 420, 394 A.2d 998 (1978).

■ The Pennsylvania Supreme Court in 1978 in *Mills, supra,* declared that the constitutional protection against double jeopardy is inspired by the self-evident precepts that "[i]t is wrong to retry a man for a crime of which he previously has been found innocent, wrong to harrass him with vexatious prosecution, and wrong to punish him twice for the same offense." *Id.* 447 Pa. at 169, 286 A.2d at 641. The Supreme Court, in that opinion further declared that the fundamental notion upon which the constitutional protection against double jeopardy is based, is composed of "three general rules which preclude a second trial or a second punishment for the same offense: (1) retrial for the same offense after acquittal; (2) retrial for the same offense after conviction; (3) multiple punishment for the same offense at one trial." *Id.,* 447 Pa. at 169, 286 A.2d at 641. While the general principle seems easy enough to grasp, when criminal activity triggers the possibility of successive prosecutions in federal and state courts, the doctrine of "dual sovereignty" comes into play and application of the rule becomes more complex for we must balance on the one hand the notion that the individual should not be twice prosecuted for the same offense while, on the other hand, we must balance the interests of *two* sovereigns. *Id.,* 447 Pa. at 169, 286 A.2d at 640–41. That balancing process prompted the Supreme Court to hold that:

> [H]enceforth in Pennsylvania, a second prosecution and imposition of punishment for the same offense will not be permitted unless it appears from the record that the interests of the Commonwealth of Pennsylvania and the jurisdiction which initially prosecuted and imposed punish-

ment are substantially different. In other words, if it appears that the interests of this Commonwealth were not sufficiently protected in the initial prosecution, then a second prosecution and imposition of additional punishment in Pennsylvania will be allowed.

*Id.*, 447 Pa. at 171–72, 286 A.2d at 642. (footnote omitted). The *Mills* court then (1) determined that the record did not manifest that the interests of Pennsylvania were not fully protected by the initial prosecution in the federal courts for bank robbery and assault and (2) ruled that a subsequent prosecution by the Commonwealth would not be permitted for the crimes of carrying a concealed deadly weapon, carrying a firearm without a license and aggravated robbery.

When the Crimes Code was enacted in 1972, the chapter setting forth the General Provisions included the following sections:

§ 109.  When prosecution barred by former prosecution for the same offense

§ 110.  When prosecution barred by former prosecution for different offense

§ 111.  When prosecution barred by former prosecution in another jurisdiction

We are here, of course, concerned with section 111 which provides:

Section 111.  When prosecution barred by former prosecution in another jurisdiction

When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for

same offense) and *the subsequent prosecution is based on the same conduct unless:*

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted *each requires proof of a fact not required by the other* and *the law defining each of such offenses is intended to prevent a substantially different harm or evil;* or

(ii) the second offense was not consummated when the former trial began.

(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the offense of which the defendant is subsequently prosecuted.  (emphasis supplied).

■ It is clear that our analysis of this appeal must commence with a determination of whether section 111 is applicable since we need only consider the double jeopardy complaints if it is determined that section 111 does *not* require the grant of the requested relief.  *See Commonwealth v. Hude, supra,* 500 Pa. at 488, 458 A.2d at 180.  If we conclude that the subsequent prosecution is *not* based on the same conduct as the federal prosecution, then our analysis is concluded since the statute makes clear that in such situation subsequent prosecution by the Commonwealth is not barred.  If, however, we conclude the subsequent prosecution by the Commonwealth "is based on the same conduct" for which appellant was prosecuted by the federal government, the prosecution can proceed only if *both* of the following conditions exist:  (1) each of the prosecutions requires proof of a fact not required by the other;  and (2) the statute upon which the Commonwealth prosecution is based is intended to prevent substantially different harm than is the federal statute.  Thus the deter-

mination of the applicability of section 111 requires us to resolve three questions:

Is the prosecution the Commonwealth proposes to undertake "based on the same conduct" for which appellant was prosecuted by the federal government?

Do *each* of the prosecutions require proof of a fact not required by the other?

Is the law defining the state offense designed to prevent a substantially different harm or evil than the law defining the federal offense?

It would seem that an affirmative answer to the initial inquiry lowers the bar to the subsequent prosecution and that only an affirmative response to *both* of the remaining inquiries can lift the bar. Our analysis is aided immeasurably by the insight and expression provided by recent appellate study of this issue.

The Pennsylvania Supreme Court in *Commonwealth v. Grazier, supra,* after concluding that section 111 was inapplicable since the criminal conduct that was the subject of review had occurred prior to the enactment of that statute, reiterated the *Mills* holding in an opinion of the esteemed former Chief Justice Henry X. O'Brien in which two of the six voting Justices joined, while two Justices concurred and one dissented. The accused in that case had allegedly been a participant in an arson scheme as a result of which he was charged by the federal government with mail fraud and by the Commonwealth with arson. The Commonwealth argued that *Mills* was inapplicable because the proposed prosecution by the Commonwealth was for a *different* offense and because the accused had been *acquitted* of the federal charges. The Superior Court, persuaded by the argument of the Commonwealth, concluded that *Mills* was limited to a situation where the Federal prosecution resulted in a conviction and opined that "[a]rson and mail fraud are two independent criminal acts, each of which involves different elements of proof and separate volitional conduct on the part of the defendant." *Commonwealth v. Studebaker,*

240 Pa.Super. 37, 50, 362 A.2d 336, 345 (1976).[11]  The Supreme Court disagreed.  Justice O'Brien first declared that the *Mills* double jeopardy holding was as applicable after an acquittal as after a conviction and then termed the argument of the Commonwealth that the prosecution for arson was for a different offense than was the prosecution for mail fraud as a claim of distinction that placed "form over substance".  He opined:

> In terms of the *Mills* analysis, a second trial will not be permitted if the interests of the Commonwealth are sufficiently protected at the federal trial.  While the purpose of the federal mail fraud statute may arguably be to protect the integrity of the mails, when viewed realistically it can be seen that the use of the mails gives jurisdiction to federal authorities over areas in which Congress has not specifically acted. . . .  Instantly, both the federal government and the Commonwealth's principal interest is against the crime of arson.  While federal mail fraud is a different crime from arson, both statutes as used in this case protect the same governmental interest.  Under these facts, *Mills* will act as a bar to a state prosecution for arson following an acquittal in federal court for mail fraud in connection with a scheme to commit arson.

*Commonwealth v. Grazier, supra* 481 Pa. at 631, 393 A.2d at 339–40 (footnote omitted).

As it barred the subsequent prosecution, the Supreme Court in *Grazier* (1) explicitly stated that the subsequent prosecution was precluded by reason of the fact that it was based upon a state statute that sought to protect the same governmental interest as did the federal prosecution and (2) implicitly rejected the holding of the Superior Court that the act of setting the blaze and the act of seeking and securing the proceeds of insurance were independent criminal acts. We are, therefore, able to infer that, while the Supreme Court in this plurality opinion found it was precluded from a

11.  The appeal of co-defendants Studebaker and Grazier was captioned *Commonwealth v. Grazier* in the Supreme Court and *Commonwealth v. Studebaker* in this court.

determination of whether subsequent prosecution by the Commonwealth was barred by section 111,[12] at least the plurality members would have concluded that application of the tests of section 111 would also have prohibited the subsequent prosecution since:

> The bar to the subsequent prosecution was lowered when the court implicitly concluded that setting the fire and subsequently seeking the proceeds of insurance from the fire was "the same conduct".

> The court made clear that the bar was not lifted during the second inquiry of the two-step analysis required by section 111 when it explicitly stated that both prosecutions were designed to protect the same governmental interest.

Our distinguished colleague Judge John P. Hester, in *Commonwealth v. Mascaro, supra,* provided a careful analysis of the Supreme Court opinions in *Mills* and *Grazier* before concluding that a subsequent prosecution by the Commonwealth was there barred by *"Mills* as well as by § 111 of the Crimes Code". The federal and state charges in *Mascaro* arose from a scheme that had enabled a corporation substantially controlled by the appellant to fraudulently secure, by the submission of false records to a county, an overpayment of $170,000 under a hauling contract. Appellant was first charged by the state authorities with five counts of theft by deception,[13] five counts of deceptive business practices,[14] one count of unsworn falsification of authorities,[15] and one count of criminal conspiracy,[16] and subsequently by the federal government with

---

**12.** The crimes committed in Grazier/Studebaker predated the effective date of the Crimes Code by four years and thus section 111 was not applicable.

**13.** 18 Pa.C.S.A. § 3922.

**14.** 18 Pa.C.S.A. § 4107.

**15.** 18 Pa.C.S.A. § 4904.

**16.** 18 Pa.C.S.A. § 903.

four counts of mail fraud,[17] and four counts of false state-ments.[18] Appellant then proceeded to assert a double jeopardy defense to the state charges. The Common Pleas Court rejected the claim and held:

> Although the Federal mail fraud allegations deal with the same deceptive scheme to defraud the County of Delaware by the submission of false records, it is neither identical nor comparable to the State offense of theft by deception.
>
> *        *        *        *        *        *
>
> Although all charges against the Defendant, both Federal and State, arise from a common and continuing scheme, this fact does not, we feel, bar State action against him for those specific occurrences not covered in the resolution of the Federal prosecution.

Judge Hester, speaking for a unanimous court, rejected that holding and concluded that both prosecutions were based on the same conduct when he opined:

> The effect of the Supreme Court holding in *Grazier, supra,* was to bar prosecution of appellant on all state charges that had arisen from the "common and continuing scheme" to defraud the county by submission of false records.
>
> Any other holding "would be to apply the 'interest analysis' test [of *Mills* ] and section 111 in such a narrow and limiting manner" that dual prosecutions would effectively "be barred *only* where exact crimes matched exact dates—crime for crime and date for date."

Judge Hester thereby concluded that the bar of section 111 to the subsequent prosecution had been lowered; nor was the bar lifted as he conducted the second inquiry of the two-step analysis and determined:

> The Commonwealth had failed to sustain the *Mills* burden of proving that the federal charges, to which appellant had pleaded guilty, had failed to adequately protect the

17. 18 U.S.C.A. § 1341.

18. 18 U.S.C.A. § 1001.

interests of the Commonwealth. He so concluded because the federal statutes under which appellant had been prosecuted were designed to guard against theft and fraud, just as had been the state statutes upon which the subsequent prosecution would be based and, therefore, the state and federal statutes employed were designed to protect a similar governmental interest.

The Commonwealth had failed to sustain the burden of proving under section 111 that the federal conviction was based upon substantially different evidence than would be required to convict upon the state charges in the subsequent prosecution.

Thus the Commonwealth in *Mascaro* was precluded both by *Mills* and by section 111 from the subsequent prosecution of appellant. It should be emphasized, lest it be obscured by the artful analysis of the opinion, that this court interpreted "the same conduct", as that term is used in section 111, to mean any and all criminal behavior committed in support of a "common and continuing scheme".

Our study is further well served by the thoughtful exposition of the eminent Justice Robert N.C. Nix, Jr. upon the companion statute to section 111, namely, section 110, which enumerates the circumstances when a subsequent prosecution is barred by a former prosecution for a different offense in the same jurisdiction. *Commonwealth v. Hudge, supra.* The appellant there had been arrested and charged with twenty counts of delivery of marijuana as a result of a series of sales alleged to have occurred during a fifteen week period. Three of the charges were dismissed at the preliminary hearing and six other counts were dismissed as a result of pretrial proceedings. The Commonwealth proceeded to trial against the appellant upon the three earliest in date of the remaining eleven charges and appellant was acquitted on all three counts. When the Commonwealth proceeded to the trial of appellant on the remaining eight charges, appellant sought to dismiss those charges on the basis of section 110 of the Crimes Code as well as on the basis of double jeopardy. Section 110, in

pertinent part, bars a subsequent prosecution for "... (ii) any offense based on the same conduct or arising from the same criminal episode ...." The court noted that the basic question was whether the eleven transactions were properly viewed as a "single criminal episode", and concluded that the three counts which the Commonwealth sought to make the subject of the subsequent prosecution arose from the same criminal episode since they were so logically interrelated that they essentially involved the same issues of law and fact. As it proceeded to that holding, the court noted:

When considering what acts constitute a single criminal episode, not only is the temporal sequence of events important, but also the logical relationship between the acts must be considered.

Interpretation of the term "same criminal episode" must be consistent with the purposes sought to be achieved by section 110, namely: (1) to protect a person accused of crimes from the governmental harrassment of being forced to undergo successive trials for offenses stemming from the same criminal episode; and (2) as a matter of judicial administration and economy, to assure finality without unduly burdening the judicial process by repetitious litigation.

The subsequent prosecution upon the eight remaining drug charges, after appellant had been acquitted of the initial three charges in the first trial, composed harrassment through successive prosecutions.

The prosecutorial tactics of the Commonwealth unduly burdened the judicial process.

The assertion of the Commonwealth, that each alleged sale constituted a separate and distinct criminal episode because they were alleged to have occurred on different dates, would permit eleven separate trials, a result section 110 was obviously designed to avoid.

Where a number of charges are logically and/or temporally related and share common issues of law and fact, a single episode exists, and separate trials would involve

substantial duplication and waste of scarce judicial resources.

The *Hude* case did not involve the instant circumstance of successive federal and state prosecutions. It may well seem, therefore, that our analysis of *Hude* and our extended discussion of the term "same criminal episode", as it appears in section 110, is unrelated to the focus of our study, namely, the term "same conduct" as used in section 111. The fact is, however, that the *Hude* declarations upon "single criminal episode" are equally applicable to the term "common and continuing scheme"—the definition supplied by this court in *Mascaro* to the term "same conduct".

## III.

We conclude that the two-step analysis mandated by section 111 precludes the prosecution the Commonwealth proposes to undertake in this case since:

The prosecution by the Commonwealth "is based on the same conduct" as was the federal prosecution.

The laws defining the federal offenses and the state offenses are intended to prevent a substantially similar harm or evil.

We need not, in view of the latter finding, determine whether each prosecution requires proof of a fact not required by the other.

It is indisputable, of course, that the statutes of both the federal government and the Commonwealth outlawing traffic in prohibited substances are designed to banish the dread evil that drugs have inflicted upon the individual victims as well as upon our society. Therefore, the fundamental issue of our study here is whether a prosecution by the Commonwealth based upon the twenty-seven transactions that were not the subject of the federal prosecution and that occurred on dates either prior or subsequent to the period of time embraced by the federal prosecution should be held to be a prosecution "based on the same conduct" as the federal prosecution. The interpretation of section 111 by and the holding of this court in *Mascaro,* as well as the

firm, clear declarations of our Supreme Court in *Hude*, mandate that we hold the proposed prosecution by the Commonwealth is based on the same conduct as the prosecution that has been completed by the federal government.

■ As we have noted, *Mascaro* barred the prosecution by the Commonwealth, after completion of the federal prosecution, on all charges that had arisen from the "common and continuing scheme" that had also been the subject of federal prosecution. While the state offenses in the instant case involved additional types of drugs than those covered by the federal charges and while the state charges arose over a six month period while the federal prosecution concerned only such violations as occurred during five weeks of that period, both prosecutions were the result of an ongoing investigation on behalf of both sovereigns by undercover agents of the "common and continuing scheme" enunciated by *Mascaro*.

Nor does consideration of the analysis of our Supreme Court in *Hude* permit us to allow the Commonwealth to proceed. The Court there soundly rejected the assertion of the Commonwealth that eleven separate trials for each of eleven alleged sales should be permitted since each sale constituted a separate and distinct criminal episode by reason of the fact that each sale occurred on a different date. The Supreme Court instead concluded that all eleven transactions constituted "the same criminal episode". *See also People v. Abbamonte,* 43 N.Y.2d 74, 371 N.E.2d 485, 400 N.Y.S.2d 766 (1977) and *Matter of Abraham v. Justices of New York Supreme Court of Bronx County,* 37 N.Y.2d 560, 338 N.E.2d 597, 376 N.Y.S.2d 79 (1975) (state criminal charges barred by prosecution in federal court for conspiracies to violate drug laws where the substantive offenses and the conspiracy charges were so closely related as to be part of the same criminal venture).

### IV.

■ Our study leads us to conclude that section 111 precludes the further prosecution proposed by the Common-

wealth. We have addressed, as we have earlier mentioned, a different aspect of this case than was presented to the hearing court and note, therefore, that we do not reject the conclusion of the hearing judge that plea counsel was not ineffective. Nonetheless, in view of our holding, that portion of the order that denied the discharge of appellant is reversed.

Order reversed.