## Commonwealth v. Traitz

*Michael J. Kane,* for the commonwealth.

*Ronald F. Kidd,* for Traitz Jr., Hurst, Crosley, Mangini, Traitz III, Osborne, Schoenberger and Joseph Traitz.

*Edward J. Daly,* for Michael Daly.

YOHN, *J.,* October 20, 1988—On April 11, 1988 defendants, Stephen Traitz Jr., Edward Hurst, Robert Crosley, Michael Mangini, Robert Medina, Stephen Traitz III, Mark Osborne, Richard Schoenberger and Joseph Traitz filed a motion to dismiss Counts 1 and 2 of the state complaint filed against them which charged defendants with violations of the Pennsylvania Corrupt Organizations Act, 18 Pa.C.S. §911(b)(4) and 18 Pa.C.S. §911(b)(3).

These same defendants had previously been indicted and convicted in the U.S. District Court for the Eastern District of Pennsylvania for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c) (RICO); RICO Con-

spiracy, 18 U.S.C. §1962(d); and other federal charges.

Defendants argued that the state prosecution was for the identical conduct for which they were previously convicted in federal court and that this violated the prohibition against double jeopardy as detailed in 18 Pa.C.S. §111 and enunciated by the Pennsylvania Supreme Court in *Commonwealth v. Mills*, 447 Pa. 163, 186 A.2d 638 (1971).

After an evidentiary hearing, presentation of briefs of counsel, oral argument, and a review of the affidavit of probable cause and criminal complaint filed by the commonwealth and the superseding indictment filed in Criminal Action no. 8600451 in the district court, being *United States of America v. Stephen Traitz Jr. et al.;* the court in an order of July 11, 1988 granted defendants' motion in part and denied it in part as follows:

"(1) With reference to the conduct alleged as part of a scheme to force union contractors to pay minimum monthly dues under the threat of physical and economic harm (100-hour-rule) or make any other payments to or on behalf of the union as part of the scheme to enforce payment of the minimum monthly dues, the court finds that this is part of the same common and continuing scheme as alleged in the federal indictment. The motion to dismiss is granted, therefore, with reference to this particular conduct and all of the predicate acts involving this particular conduct are stricken. *Commonwealth v. Abbott*, 319 Pa. Super 479, 466 A.2d 644 (1983).

"(2) With reference to all of the other conduct alleged in the affidavit of probable cause, the court finds that the conduct alleged is neither the same conduct nor part of the same common and continuing scheme as is alleged in the federal indictment,

but is different conduct and a separate and distinct scheme from that alleged in the federal indictment. The motion to dismiss is, therefore, denied as to all of that conduct. 18 Pa.C.S. §111."

Defendants now appeal from that order.

On May 13, 1988 defendant, Michael Daly, who along with the aforementioned defendants was named in the federal and state complaints, filed a separate motion through his own counsel to dismiss counts 1 and 2 of the state complaint raising the same issues. In an order of July 26, 1988 (which is substantially identical to the court's order of July 11, 1988) the court granted this defendant's motion in part and denied it in part. Defendant Daly appealed from that order on the same grounds as the other named defendants. Therefore, in light of the above, the appeal of defendant Daly is considered together with the other named defendants' appeal.

## BACKGROUND

A review of the facts of this case is in order.

On October 23, 1986, defendants were indicted in the district court for violations of RICO, 18 U.S.C. §1962(c); RICO conspiracy, 18 U.S.C. §1962(d) and other federal charges.

The federal charges alleged that from January 1983 through September 1986, defendants conspired and agreed among themselves and with others unknown to participate directly and indirectly in the conduct of the affairs of Roofers Union Local 30/30B through a pattern of racketeering activity. The charges also alleged that from January 1983 through September 1986 defendants willfully and knowingly participated directly and indirectly in the conduct of the affairs of Roofers Union Local 30/30B through a pattern of racketeering activity. More specifically, the racketeering activity alleged

in the federal indictment included the following: (1) bribery of public officials; (2) collection of credit by extortionate means; (3) acceptance and solicitation to influence operation of employee benefit plan; (4) embezzlement of funds from an employee benefit plan; (5) mail fraud; (6) embezzlement of union funds; (7) collection of unlawful debt; (8) interference with commerce by means of extortion.

On November 23, 1987, four months prior to their state arraignment, defendants were convicted in district court for violations of RICO, 18 U.S.C. §1962(c); RICO conspiracy 18 U.S.C. §1962(d) and other federal crimes. On January 22, 1988 and March 4, 1988 defendants were sentenced for their federal RICO convictions. Each of the defendants received terms of imprisonment ranging from eight to 15 years for their federal RICO convictions. All of the defendants also received additional sentences for their non-RICO convictions.

On March 17, 1988 defendants were arraigned in Montgomery County before District Justice Michael Richman for violations of the Pennsylvania Corrupt Organizations Act, 18 Pa.C.S. §911(b)(3) and 18 Pa.C.S §911(b)(4). In addition, all of the defendants, with the exception of Michael Mangini, were also charged in other counts with other violations which were not subject to defendants' motion to dismiss.[1]

---

1. Defendants were also charged as follows: Stephen Traitz Jr. (three counts of terroristic threats; two counts of theft by extortion and one count of intimidation of witnesses or victims); Edward Hurst (one count each of criminal conspiracy, theft by extortion and terroristic threats); Robert Crosley (one count each of criminal conspiracy, theft by unlawful taking and theft by extortion); Robert Medina (18 counts of theft by extortion, five counts of criminal conspiracy and one count of terroristic threats); Stephen Traitz III (three counts of crim-

The state complaint alleged that between October 1, 1968 and May 31, 1987 defendants, along with five others not charged in the federal indictment, participated as employees and associates of the Roofers Union Local 30/30B in the conduct of the union's affairs through a pattern of racketeering and conspired to do so. In particular, the racketeering activity alleged in the state complaint included the following: (1) criminal coercion; (2) terroristic threats; (3) criminal mischief; (4) witness intimidation; (5) theft by extortion; and (6) criminal conspiracy to commit criminal coercion, criminal mischief, witness intimidation, arson, and theft by extortion.

## DISCUSSION

Defendants assert that because they were convicted in federal court of conducting and conspiring to conduct the affairs of Roofers Union Local 30/30B through a pattern of racketeering they cannot now be convicted in state court of conducting and conspiring to conduct the union through a pattern of racketeering. Defendants urge that 18 Pa.C.S. §111 and *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971), mandate this conclusion.

In *Commonwealth v Mills, supra,* the Pennsylvania Supreme Court was faced with the question of whether an individual may be convicted and pun-

---

inal conspiracy, six counts of theft by extortion and one count of terroristic threats); Mark Osborne (two counts of terroristic threats, five counts of theft by extortion and one count criminal conspiracy); Richard Schoenberger (three counts of criminal conspiracy, 15 counts of theft by extortion and two counts of terroristic threats); Joseph Traitz (two counts of criminal conspiracy and three counts theft by extortion).

ished in the courts of Pennsylvania if he has previously been convicted and punished in a federal court for the identical unlawful conduct. In *Mills* defendant was indicted by the U. S. government for violation of 18 U.S.C. §2113(a), (b) and (d), i.e., bank robbery and assault. Defendant pleaded guilty to the federal crimes and was sentenced to a term of imprisonment. At the same time, defendant was also indicted by the state for carrying a concealed deadly weapon, unlawfully carrying a firearm without a license and aggravated robbery. Defendant filed a motion in the state court to dismiss the indictments pending against him on the ground that further prosecution would constitute double jeopardy. This motion was denied. Defendant was convicted of the state charges and sentenced to a term of imprisonment. Defendant filed an appeal in the Superior Court which affirmed the orders of the trial court. The Supreme Court granted allocatur. In vacating the order of the Superior Court and the orders of the trial court, the Pennsylvania Supreme Court held:

"In Pennsylvania, a second prosecution and imposition of punishment for the same offense will not be permitted unless it appears from the record that the interests of the Commonwealth of Pennsylvania and the jurisdiction which initially prosecuted and imposed punishment are substantially different. In other words, if it appears that the interests of this commonwealth were not sufficiently protected in the initial prosecution, then a second prosecution and imposition of additional punishment in Pennsylvania will be allowed." *Id.* at 171-2, 286 A.2d at 642.

The interest "analysis test" enunciated in *Mills* was embodied in statute when the Pennsylvania legislature specified the conditions under which

subsequent prosecutions brought in the state would be barred by enacting section 111 of the 1972 Crimes Code (titled *When prosecution barred by former prosecution in another jurisdiction*). Section 111 provides:

"When conduct constitutes an offense within the concurrent jurisdiction of this commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this commonwealth under the following circumstances:

"(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) *and the subsequent prosecution is based on the same conduct* unless:

"(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

"(ii) the second offense was not consummated when the former trial began.

"(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the offense of which the defendant is subsequently prosecuted." (emphasis supplied)

In *Commonwealth v. Abbott, supra,* the court stated that the determination of the applicability of section 111 requires the court to resolve these questions:

"(1) Is the prosecution the commonwealth proposes to undertake based on the same conduct for which defendant was prosecuted by the federal government?

"(2) Do each of the prosecutions require proof of a fact not required by the other?

"(3) Is the law defining the state offense designed to prevent a substantially different harm or evil than the law defining the federal offense?"[2] *Id.* at 489, 466 A.2d at 649 (1983).

If the court "concludes that the subsequent prosecution is not based on the same conduct as the federal prosecution, then our analysis is concluded since section 111 makes clear that in such situations a subsequent prosecution by the commonwealth is not barred." *Id.* at 488, 466 A.2d at 649. If, however, the court finds that the subsequent prosecution by the commonwealth "is based on the same conduct" for which defendant was prosecuted by the federal government, the prosecution can proceed only if there is an affirmative response to both the remaining inquiries in section 111. *Id.* at 488, 466 A.2d at 649.

In the instant case, the prosecution the commonwealth proposes to undertake is not based on the same conduct for which the defendants were prosecuted by the federal government. Accordingly, the state's prosecution is not barred.

The term "same conduct" is not defined in section 111. The Superior Court, however, has construed "same conduct" to mean acts which, while separate, constitute part of a "common and continuing scheme." *Abbott* at 493, 466 A.2d at 651, *Com-*

---

2. The third inquiry posed in section 111 is essentially a state interest analysis. It is a codification of the principles enunciated by the Supreme Court in *Mills*.

*monwealth v. Mascaro,* 260 Pa. Super. 420, 394 A.2d 998 (1978). The meaning of "same conduct" is clearly enunciated in the cases of *Abbott* and *Mascaro.*

In *Mascaro,* defendant was indicted by the state for theft by deception, deceptive business practices, unsworn falsification to authorities and criminal conspiracy. He was subsequently indicted by the federal government for mail fraud and false statements. Both the state and federal indictments arose from a scheme whereby Delaware County overpaid defendant's company pursuant to a contract between him and Delaware County.

Prior to having been brought to trial on the state charges in Delaware County, defendant pleaded guilty to the federal mail fraud and false statement charges. Defendant then moved to dismiss the state court charges on double-jeopardy grounds. The trial court denied the motion stating that although the federal mail fraud allegations dealt with the same scheme as the state charges, the federal mail statute was neither identical nor comparable to the state offense of theft by deception.

In reversing the trial court and dismissing the indictment, the Superior Court held:

"We find that a proper application of the *Mills* 'interest analysis' test and section 111 of the Crimes Code coupled with the Supreme Court's recent opinion in *Commonwealth v. Studebaker,* 481 Pa. 622, 393 A.2d 335 (1978), bars appellant's prosecution in the instant case on all state charges which have arisen from the 'common and continuing scheme' — that scheme being to defraud the County of Delaware by the submission of false records. To hold otherwise would be to apply the 'interest analysis' test and section 111 in such a narrow and limiting manner so that dual prosecutions would ef-

fectively be barred only where exact crimes match exact dates — ·crime for crime and date for date." *Mascaro* at 427, 394 A.2d at 1001.

*Abbott* likewise held that "same conduct" equates with acts arising out of a "common and continuing scheme."

In *Abbott,* defendant was an elderly physician who was arrested and charged with 47 violations of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act. Defendant was charged after he unlawfully prescribed and dispensed certain controlled substances and other drugs to four undercover agents duing a six month period. As a result of certain of these transactions, defendant was also charged in federal court with six counts alleging violation of federal drug laws. Following conviction in federal court, defendant pled guilty to 27 state counts and received a seven and one-half year to 15-year sentence concurrent with his 15-year federal sentence.

In *Abbott,* the Superior Court held that defendant's state indictment should have been dismissed despite the fact that the state violations covered a longer period of time and also included violations which were not charged in the federal indictment. The court stated that although there were differences in the state and federal indictments, the conduct was the same because it was all part of a "common and continuing scheme."

The Pennsylvania Supreme Court has also ruled that dual prosecution arising out of a common scheme is barred, though the decision did not construe section 111. *Commonwealth v. Grazier,* 481 Pa. 622, 393 A.2d 335 (1978).

With these principles in mind, the court reviewed the documents in the instant case to determine whether the state complaint contained allegations

of the same conduct or the same common and continuing scheme as the federal indictment. In the federal indictment, the defendants were alleged to have engaged in the following racketeering activity:

(1) Bribery of public officials. This included multiple acts of bribery of judges as well as other public officials and employees. In particular, defendants Stephen Traitz Jr., Michael Daly, Michael Mangini and Robert Crosley were charged with giving, offering and promising money during the period of October 9, 1985 through December 1985 to the area director, Occupational Safety and Health Administration, United States Department of Labor (OSHA), to induce the area director to do or to omit to do acts in violation of his lawful duty. In addition, defendants Stephen Traitz Jr., Robert Crosley, Edward Hurst, Michael Mangini, Ernest Williams and Mark Osborne were charged with giving, offering and promising money to judges and judges-elect as consideration for decisions and the exercise of official discretion in judicial proceedings. Finally, defendants were charged with giving, offering and promising multiple bribes to employees of the district attorney's office, police officers, and other public officials.

(2) Collection of credit by extortionate means. This charge included multiple acts of the use of extortionate means to collect and attempt to collect extensions of credit and to punish debtors in that defendants, Stephen Traitz Jr., Robert Medina, Robert Crosley, Richard Schoenberger, Ernest Williams, Joseph Traitz, Stephen Traitz III, Daniel Cannon and Buddy Osborn, and their associates, threatened the victims with the use of violence and other criminal means which would cause harm to the victim's persons and property.

(3) Acceptance and solicitation of kickbacks to influence the operation of employee benefit plan. This charge included multiple acts wherein defendants Stephen Traitz Jr., Edward P. Hurst, Robert Crosley and Michael Mangini, who were at all relevent times trustees, administrators, officers, employees or custodians of the Locals 30/30B Prepaid Legal Services Funds, solicited and accepted from a law firm 10 percent of the fees paid to the law firm because of and with the intent to be influenced in their actions, decisions and other duties relating to retention of the law firm as sole provider of legal services to participants under the plan.

(4) Embezzlement of funds from an employee benefit plan. This charge encompassed multiple acts of unlawful embezzlement, stealing and conversion of monies of an employee benefit plan in that defendants Stephen Traitz Jr., Edward P. Hurst, Robert Crosley and Michael Mangini from 1983 through 1985 embezzled, stole and unlawfully and willfully converted, to their own use and to the use of others, money of the locals 30/30B Prepaid Legal Services Funds, through the kickback scheme described above.

(5) Mail fraud. Defendants Stephen Traitz Jr. and Robert Medina, on behalf of the Roofers Union, devised a scheme to defraud the Centennial Insurance Company of the insured value of a 1985 Chrysler Fifth Avenue automobile.

(6) Embezzlement of union funds. This charge included one act wherein defendants Stephen Traitz Jr., Edward P. Hurst, Michael Mangini and Robert Crosley, while officers and employees of the Roofers Union, embezzled, stole and unlawfully and wilfully obstructed and converted to their own use and the use of others the moneys, funds, securities, property and other assets of the Roofers Union.

(7) Interference with commerce by means of extortion. This charge included multiple acts wherein defendants forced union contractors to pay minimum monthly union dues (100-hour rule) under threat of physical and economic harm.

(8) Collection of unlawful debt. This charge included one act wherein from on or about October 22, 1985, through on or about November 21, 1985 defendants Stephen Traitz Jr. and Michael Mangini collected a gambling debt of approximately $15,000 from Richard Kinkade, a/k/a "Rip."

By contrast, in the instant case, the conduct and the common and continuing scheme alleged are the complete control of the roofing industry in the union's territorial jurisdiction through a pattern of violence committed primarily against non-union roofing contractors and employees. In furtherance of the objective and overall scheme, the state complaint alleges that defendants engaged in the following racketeering activity:

(1) Criminal coercion. This charge includes numerous incidents wherein defendants allegedly threatened to commit a criminal offense primarily against non-union roofing contractors to force the contractors to sign a union agreement or stop working on a project.

(2) Terroristic threats. This charge includes multiple incidents, the vast majority of which were alleged threats against non-union contractors by defendants to induce the non-union contractors into signing a union agreement or refrain from a particular job. Several of the acts alleged involve threats against union contractors to refrain from performing contracts which the union determined the contractors were not entitled to do. Finally, a limited number of the acts alleged involved threats against a union contractor for violating the terms of the

collective bargaining agreement as well as for challenging the union's demands during the negotiation of a new collective bargaining agreement.

(3) Criminal mischief. The majority of these acts alleged damage caused by defendants to the property of non-union roofing companies and their customers. The remaining acts involved damage allegedly committed against union contractors for violating union-imposed work rules.

(4) Witness intimidation. This charge included multiple acts allegedly committed against non-union roofers who were victims of union coercion and assaults.

(5) Theft by extortion. The vast majority of these acts involved alleged extortion committed against non-union roofers and general contractors. One act involved a union roofer being forced to sign a second union agreement and pay an initiation fee to perform work in New Jersey.

(6) Criminal conspiracy to commit criminal coercion, criminal mischief, witness intimidation, arson and theft by extortion. This charge included multiple acts wherein defendants allegedly attempted to force non-union roofers and contractors into signing a union agreement and paying dues. The remaining acts included union attempts to dictate job restrictions to union contractors, or retaliation for violation of union rules.

The court reviewed at great length the complaint in the state action, the affidavit of probable cause in the state action and the superceding indictment in the federal action. The court concluded that, with reference to the scheme to force union contractors to pay minimum monthly dues under the threat of physical and economic harm (100-hour rule) or make any other payments to or on behalf of the union as part of the scheme to enforce the payment

534

of the minimum monthly dues, these issues had been raised in the federal indictment. Therefore, any further prosecution based on that conduct was prohibited because a continuation of that conduct involving other events would still be part of the same common and continuing scheme.

However, in reviewing all of the other conduct alleged in the affidavit of probable cause and the state complaint, the court found that this was different conduct (as is clearly demonstrated by the above-detailed description of the charges alleged in the federal indictment and state complaint) and not part of the same common and continuing scheme as was found in the federal indictment. The acts alleged in the state complaint dealt with an entirely different purpose in that for the most part they included threats and intimidations against non-union roofers to force them to join the union. Defendants' conduct in pursuit of this objective was not in any way a part of the federal indictment. In addition, there were some limited acts alleged in the state complaint dealing with forcing union roofers to go along with union rules other than the 100-hour rule but, again, this type of conduct was not part of the federal indictment so the court found it was not barred in the subsequent state indictment.

Therefore, based on all of the above, the court concluded that the state criminal complaint spells out an entirely different pattern of racketeering activity from that set forth in the federal indictment. The conduct is not the same conduct as that set forth in the federal indictment and there is no common and continuing scheme set forth in the state complaint which is the same as that included in the federal indictment except as to the limited extent specified in the order. As a result, there is no bar to the state's prosecution.

For all of the foregoing reasons, the court's orders of July 11, 1988, and July 26, 1988 should be affirmed.