597 A.2d 1129

COMMONWEALTH of Pennsylvania, Appellee,

v.

**Stephen TRAITZ, Jr., Edward Hurst, Robert Crosley, Michael Mangini, Robert Medina, Stephen Traitz, III, Mark Osborne, Robert Schoenberger and Joseph Traitz, Appellants.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 1990.

Decided Oct. 7, 1991.

306

Ronald F. Kidd, Teresa N. Cavenagh, Joshua Sarner, Philadelphia, for appellants.

Michael J. Kane, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

The issue presented in this appeal is whether the Commonwealth's prosecution of the Appellants for violations of the Pennsylvania Corrupt Organizations Act, 18 Pa.C.S.A. § 911, was barred by a prior federal prosecution for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. The Superior Court 393 Pa.Super. 641, 564 A.2d 1008 affirmed the order of the Montgomery County Court of Common Pleas that

had granted in part and denied in part the Appellants' Motion to Dismiss two counts of the complaint filed against them alleging violations of 18 Pa.C.S. § 911(b)(3) and 18 Pa.C.S. § 911(b)(4). We find that the lower courts erred in failing to dismiss the state prosecution for violations of the Pennsylvania Corrupt Organizations Act and now reverse the Superior Court's order insofar as it affirmed that part of the trial court's order denying the Appellants' Motion to Dismiss.

On October 23, 1986, the Appellants were indicted in the United States District Court for the Eastern District of Pennsylvania for RICO violations, 18 U.S.C. § 1962(c) and (d), and other federal charges. The federal indictment alleged that from January, 1983 through September, 1986, the Appellants conspired and agreed among themselves and with others to participate directly and indirectly in the conduct of the United Slate, Tile and Composition Roofers, Damp and Waterproof Workers' Association Local 30 and Residential Reroofers Union Local 30B (Roofers Union) through a pattern of racketeering activity and the collection of unlawful debts.

The activity alleged included (1) multiple acts of bribery of public officials; (2) multiple acts of extortion in violation of 18 U.S.C. § 1951; (3) multiple acts of collections of credit by extortionate means in violation of 18 U.S.C. § 894; (4) bribery of a federal official; (5) solicitation, payment and acceptance of kickbacks to influence the operations of an employee benefit plan; (6) embezzlement of funds from a health and welfare benefit plan; (7) engaging in a scheme to defraud through the use of the mails; and (8) embezzlement of funds from a labor organization. The specific factual allegations underlying those acts reveal a pervasive scheme by the Appellants to coerce nonunion contractors to become members of the Roofers Union through physical violence, intimidation, and destruction of property.

On November 23, 1987, the Appellants were convicted in federal court for violations of RICO, 18 U.S.C. § 1962(c), RICO conspiracy, 18 U.S.C. § 1962(d), and other federal

crimes. On January 22, 1988 and March 4, 1988, the Appellants were sentenced to terms of imprisonment ranging from eight to fifteen years for the federal RICO convictions. Fines ranging from $5,000 to $50,000 were imposed as well on several of the Appellants. All of the Appellants received additional sentences for their non-RICO convictions.

On March 17, 1988, the Appellants were arraigned in Montgomery County for violations of the Pennsylvania Corrupt Organizations Act, 18 Pa.C.S.A. § 911(b)(3) and (4). Additional charges were filed against all of the Appellants, except for Michael Mangini, but are not involved in this appeal.

The state Corrupt Organizations Act violations allege that between October 1, 1968 and May 31, 1987, the Appellants conspired and agreed among themselves and with other persons to participate in the conduct of the Roofers Union's affairs through a pattern of racketeering activity. The racketeering activity specifically alleged in the state complaint included: (1) criminal coercion; (2) terroristic threats; (3) criminal mischief; (4) witness intimidation; (5) theft by extortion; and (6) criminal conspiracy.

The Appellants filed a motion to dismiss the violations of the Corrupt Organizations Act, which were set forth in Counts 1 and 2 of the state. complaint. Following an evidentiary hearing, the trial court entered an order granting the Appellants' motion in part and denying it in part. The order stated,

1 With reference to the conduct alleged as part of a scheme to force union contractors to pay minimum monthly dues under the threat of physical and economic harm (100–hour–rule) or make any other payments to or on behalf of the union as part of the scheme to enforce payment of the minimum monthly dues, the court finds that this is part of the same common and continuing scheme as alleged in the federal indictment. The motion to dismiss is granted, therefore, with reference to this particular conduct and all of the predicate acts involving

this particular conduct are stricken.  *Commonwealth v. Abbott,* 319 Pa.Super. 479, 466 A.2d 644 (1983).

2  With reference to all of the other conduct alleged in the affidavit of probable cause, the court finds that the conduct alleged is neither the same conduct nor part of the same common and continuing scheme as is alleged in the federal indictment, but is different conduct and a separate and distinct scheme from that alleged in the federal indictment.  The motion to dismiss is, therefore, denied as to all of that conduct.  18 Pa.C.S. § 111.

The 100–hour–rule referred to the scheme initiated by the Roofers Union in 1985 forcing union contractors to make minimum monthly contributions to the union fund based upon a minimum of 100 hours of work per month.  The minimum contribution was imposed regardless of whether the union contractors had worked for 100 hours.

The Appellants contend that the state prosecution for violations of the Corrupt Organizations Act violates the prohibition against double jeopardy embodied in 18 Pa. C.S.A. § 111 and as enunciated by this Court in *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971).  The Appellants assert that the lower courts' analysis was faulty in that it focused on the individual acts of racketeering, rather than the overall scheme allegedly advanced by those acts.  The Appellants characterize the overall scheme as an attempt to gain power and influence over the roofing industry and Roofers Union through fear, intimidation, and other illegal conduct.

The Commonwealth argues that the pattern of racketeering alleged in the state prosecution is sufficiently distinct from that alleged in the federal prosecution to protect the Appellants from multiple prosecutions for the same crime. In determining whether the Appellants' acts arose out of the same conduct underlying the former prosecution, the Commonwealth argues for a narrow interpretation of the Appellants' ultimate scheme.  The Commonwealth's restrictive interpretation of the scheme would permit a subsequent prosecution for violations of the Corrupt Organizations Act

if the predicate offenses did not overlap, no matter how related the offenses might be to those originally charged.

In *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971), we held that a person may not be convicted and punished in a state court prosecution if he has been previously convicted and punished in a federal court for the identical unlawful conduct. The defendant was indicted by the Commonwealth for aggravated robbery and firearms offenses. At the same time, he was indicted by the United States for bank robbery and assault, in violation of 18 U.S.C. § 2113. After pleading guilty to the federal indictment, he filed a motion to dismiss the state court indictment on the basis of double jeopardy. The motion was denied.

On appeal, we held that a subsequent prosecution and imposition of punishment for the same offense will not be permitted unless the Commonwealth's interests are substantially different from the interests of the jurisdiction that initially prosecuted and imposed punishment. We stated that,

> The double jeopardy clause breaks down into three general rules which preclude a second trial or a second punishment for the same offense: (1) retrial for the same offense after acquittal; (2) retrial for the same offense after conviction; (3) multiple punishment for the same offense at one trial. The judiciary views these rules as expressions of self-evident moral precepts: It is wrong to retry a man for a crime of which he previously has been found innocent, wrong to harass him with vexatious prosecution, and wrong to punish him twice for the same offense. The policies which underlie the prohibition are first, guilt should be established by proving the elements of a crime to the satisfaction of a single jury, not by capitalizing on the increased probability of conviction resulting from repeated prosecutions before many juries; second, the authorities should not be able to search for an agreeable sentence by bringing successive prosecutions for the same offense before different juries; and third,

criminal trial should not become an instrument for badgering individuals.

447 Pa. at 169–170, 286 A.2d at 641 (citations omitted). These considerations focus on the fundamental rights of the individual. We recognized, however, that a second prosecution will be permitted when the interests of the Commonwealth are not sufficiently protected in the initial prosecution.

Subsequent to this Court's decision in *Mills*, legislation was enacted governing when prosecution is barred by a former prosecution in another jurisdiction. The statute provides,

When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is based on the same conduct unless:

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(ii) the second offense was not consummated when the former trial began.

(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be estab-

lished for conviction of the offense of which the defendant is subsequently prosecuted.

18 Pa.C.S.A. § 111.

■ In determining whether section 111 is applicable, three questions must be addressed:

(1) Is the prosecution the Commonwealth proposes to undertake based on the same conduct for which the individual was prosecuted by the other jurisdiction?

(2) Do each of the prosecutions require proof of a fact not required by the other?

(3) Is the law defining the state offense designed to prevent a substantially different harm or evil than the law defining the other jurisdiction's offense?

*Commonwealth v. Abbott,* 319 Pa.Super. 479, 489, 466 A.2d 644, 649 (1983).

■ The threshold inquiry is whether the Commonwealth's prosecution is based on the same conduct for which the Appellants were prosecuted by the federal government. Ordinarily, an affirmative response would necessitate further inquiry as outlined in *Abbott.* In this case, however, the Commonwealth has conceded that an affirmative response to this inquiry would bar prosecution of Counts 1 and 2 of the criminal complaint.

The Corrupt Organizations Act provides:

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

(4) It shall be unlawful for any person to conspire to violate any of the provisions of paragraphs (1), (2) or (3) of this subsection.

18 Pa.C.S.A. § 911(b)(3) and (4). "Racketeering activity" is defined to include indictable acts under enumerated provisions of the Crimes Code and conspiracy to commit any of the acts. 18 Pa.C.S.A. § 911(h).

The language of the RICO provisions upon which the Appellants' federal convictions were based is virtually identical to that of the state statute:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c) and (d).

The RICO Act and Corrupt Organizations Act target organized crime that surfaces by varying patterns of illegal conduct, recognizing that the money and power obtained by organized crime are used to subvert legitimate businesses. It is the course of illegal conduct, not the underlying individual criminal acts, that are the focus of the two statutes. The conduct to be examined, therefore, is the conduct of an individual evincing a pattern of racketeering activity. The significance lies not with the individual offenses culminating in the pattern of racketeering activity, but in the scheme that is promoted by the pattern of racketeering activity.

The trial court concluded that the state criminal complaint spelled out an entirely different pattern of racketeering activity than that demonstrated in the federal indictment. The trial court emphasized that the acts alleged in the state complaint primarily dealt with threats and intimidations against non-union roofers to force them to join the union. With that emphasis, the trial court defined the Appellants' scheme as the complete control of the roofing industry through a pattern of violence committed primarily against non-union roofing contractors and employees.

We find that the trial court's description of the Appellants' conduct is too narrow. The conduct of the Appellants promoted their scheme of gaining complete control of the

roofing industry. The allegations of the federal indictment and state criminal complaint disclose individual acts of bribery, threats, and intimidation, all designed to achieve that purpose. By focusing on particular acts designed to achieve the purpose, the trial court's definition of the scheme was circumscribed by those particular acts. The Appellants' scheme was effectuated by employing threatening, intimidating, and cajoling tactics against individuals acting in different capacities, but the scheme was unquestionably single-minded—i.e., control of the roofing industry.

We conclude that Counts 1 and 2 of the state criminal complaint are based on the same conduct for which the Appellants were prosecuted by the federal government. As noted previously, the Commonwealth has conceded that this finding precludes its prosecution of the Appellants. Therefore, no further inquiry must be made. The order of the Superior Court is reversed insofar as it affirmed the trial court's order denying the Appellants' Motion to Dismiss.

FLAHERTY, J., files a concurring opinion.

FLAHERTY, Justice, concurring.

I write separately to suggest that quite simply the case is controlled by 18 Pa.C.S.A. § 111, which provides, inter alia, that a subsequent state prosecution is barred unless:

> the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil ...

The evident purpose of this provision is to prevent subsequent prosecutions where the first prosecution was addressed to the same evil as the subsequent prosecution. Further, the use of the conjunction "and" requires that subsequent prosecutions addressed to the same evil as the first are barred even if the subsequent prosecution requires proof of a fact not required by the former prosecution.

Because the harm or evil to be prevented by the RICO statute is identical to that to be prevented by the Corrupt Organizations Act, the subsequent Corrupt Organizations Act prosecution is barred.